BOBBIE R. BAILEY, State Bar No. 159663
EDWARD MARTINOVICH, State Bar No. 237844
LEADER BERKON COLAO & SILVERSTEIN LLP
445 South Figueroa Street, Suite 2980
Los Angeles, CA 90071
Telephone: (213) 234-1750
Facsimile: (213) 234-1747
Email: bbailey@leaderberkon.com
       emartinovich@leaderberkon.com

BENJAMIN C. RUBINSTEIN (*pro hac vice*)
MAXWELL D. HERMAN (*pro hac vice*)
HERBERT SMITH FREEHILLS KRAMER NEW YORK LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: Benjamin.Rubinstein@hsfkramer.com
       Maxwell.Herman@hsfkramer.com

*Attorneys for Defendant British American Tobacco p.l.c.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Vanessa Bell, Destiney Murrah, and Sean Nugent, individually and as the representative of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>R.J. Reynolds Vapor Company, R.J. Reynolds Tobacco Company, Reynolds America Inc., and British American Tobacco p.l.c.,<br><br>Defendants. | Case No. 3:25-cv-04521-TLT<br><br>**DEFENDANT BRITISH AMERICAN TOBACCO P.L.C.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: February 3, 2026<br>Time: 2:00 pm<br>Ctrm.: Courtroom 9, 19th Floor<br>Before: Hon. Trina J. Thompson |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................................ 1

II. STATEMENT OF FACTS ......................................................................................................... 1

    A. Plaintiffs' Complaint Alleges That BAT p.l.c. Is A Foreign Corporation, But Does Not Allege Specific Contacts Between California And BAT p.l.c. .................................. 2

    B. BAT p.l.c. Is A United Kingdom Investment Holding Company Without Any Presence In California ............................................................................................................ 3

    C. BAT p.l.c. Does Not Design, Manufacture, Market, Distribute Or Sell Products In California Or Anywhere Else ............................................................................................... 3

    D. BAT p.l.c. Maintains Corporate Formalities With Its Indirect Subsidiaries ...................... 3

III. LEGAL STANDARD ................................................................................................................. 4

IV. ARGUMENT ............................................................................................................................... 4

    A. The Court Lacks General Jurisdiction Over Foreign Holding Company BAT p.l.c. ......... 5

    B. The Court Lacks Specific Jurisdiction Over BAT p.l.c., Which Does Not Design, Manufacture, Market, Distribute Or Sell The Products In California Or Anywhere Else ....................................................................................................................................... 6

    C. The Court Cannot Impute to BAT p.l.c. The Alleged Forum Contacts Of Its Separate And Distinct Indirect Subsidiaries. ...................................................................... 8

V. CONCLUSION .......................................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amba Mktg. Sys. Inc. v. Jobar Int'l, Inc.*,
　551 F.2d 784 (9th Cir. 1977) ...................................................................................................4, 6

*Apple Inc. v. Allan & Assocs. Ltd.*,
　445 F. Supp. 3d 42 (N.D. Cal. 2020) .....................................................................................8, 10

*Blockchain Game Partners, Inc. v. Gamedia, B. V.*,
　2024 WL 4328836 (C.D. Cal. Sept. 9, 2024), *appeal dismissed*, 2025 WL 877524
　(9th Cir. Jan. 13, 2025) .........................................................................................................7, 8 n.4

*CollegeSource, Inc. v. AcademyOne, Inc.*,
　653 F.3d 1066 (9th Cir. 2011) .....................................................................................................4

*Corcoran v. CVS Health Corp.*,
　169 F. Supp. 3d 970 (N.D. Cal. 2016) .......................................................................................11

*Daimler AG v. Bauman*,
　571 U.S. 117 (2014)..........................................................................................................5, 9 n.5

*Dorel Indus., Inc. v. Superior Ct.*,
　134 Cal. App. 4th 1267 (2005) ..................................................................................................12

*Facebook, Inc. v. Teachbook.com, LLC*,
　2011 WL 1672464 (N.D. Cal. May 3, 2011) ...............................................................................7

*Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*,
　828 F.2d 1439 (9th Cir. 1987) .....................................................................................................4

*Gardner v. Starkist Co.*,
　418 F. Supp. 3d 443 (N.D. Cal. 2019) ..........................................................................10, 11, 12

*Gerritsen v. Warner Bros. Ent. Inc.*,
　116 F. Supp. 3d 1104 (C.D. Cal. 2015) .....................................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
　564 U.S. 915 (2011)......................................................................................................................5

*Hernandez v. Mimi's Rock Corp.*,
　632 F. Supp. 3d 1052 (N.D. Cal. 2022) ..................................................................................9, 10

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
　485 F.3d 450 (9th Cir. 2007) .......................................................................................................7

*Int'l Shoe Co. v. Washington*,
　326 U.S. 310 (1945).....................................................................................................................4

*Kellman v. Whole Foods Mkt., Inc.*,
   313 F. Supp. 3d 1031 (N.D. Cal. 2018) ................................................................................... 7

*Marek v. Molson Coors Beverage Co.*,
   580 F. Supp. 3d 848 (N.D. Cal. 2022) ................................................................................ 8 n.4

*Moody v. Charming Shoppes of Delaware, Inc.*,
   2008 WL 2128955 (N.D. Cal. May 20, 2008) ...................................................................... 12

*Perez v. Indian Harbor Ins. Co.*,
   613 F. Supp. 3d 1171 (N.D. Cal. 2020) .................................................................................. 8

*Pooka Pooka LLC v. Safari Beach Club*,
   2013 WL 12203872 (N.D. Cal. Apr. 17, 2013) ...................................................................... 7

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ................................................................................... 9, 11, 12

*Schwarzenegger v. Fred Marin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ............................................................................................. 5, 6

*Shanghai Jinko Green Energy Enter. Mgmt. Co. v. Abalance Corp.*,
   2025 WL 2105908 (N.D. Cal. July 28, 2025) .................................................................. 11, 12

*Sinatro v. Mrs. Gooch's Nat. Food Mkts., Inc.*,
   2023 WL 2324291 (N.D. Cal. Feb. 16, 2023) (Thompson, J.) ......................................... 4, 6, 8

*Sonora Diamond Corp. v. Superior Ct.*,
   83 Cal. App. 4th 523 (2000) .................................................................................................. 9

*Stewart v. Screen Gems-EMI Music, Inc.*,
   81 F. Supp. 3d 938 (N.D. Cal. 2015) ............................................................................ 1 n.1, 11

*Terracom v. Valley Nat'l Bank*,
   49 F.3d 555 (9th Cir. 1995) .................................................................................................... 4

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) .......................................................................... 9, 10, 10 n.5

**Statutes & Rules**

Cal. Code Civ. Proc. § 410.10 ........................................................................................................ 4

Fed. R. Civ. P. 12(b)(2) ................................................................................................ 1 n.1, 13 n.8

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 13 n.9

## NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that on February 3, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9 – 19th Floor of the Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant British American Tobacco p.l.c. will appear and move this Court for an order dismissing the Complaint (Dkt. No. 1) with prejudice. This Motion to Dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(2) and seeks dismissal for lack of personal jurisdiction. The Motion is based on this Notice, the accompanying Memorandum of Points and Authorities and associated Declaration of Caroline Ferland, and the Court's file and records in this action.

## STATEMENT OF THE ISSUES

Whether the Court can exercise personal jurisdiction in a product false advertising case over a foreign investment holding company without any presence in the forum that does not design, manufacture, market, distribute or sell any products in the forum, or elsewhere, and maintains corporate formalities with its non-resident, indirect subsidiary co-defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Defendant British American Tobacco p.l.c. ("BAT p.l.c.") is not subject to personal jurisdiction in California. Plaintiffs' conclusory jurisdictional allegations to the contrary fail to meet their burden to establish a factual connection between foreign holding company BAT p.l.c.'s conduct, Plaintiffs' injuries and the State of California, and Plaintiffs cannot cure this fatal defect in their pleading because no factual connection exists. As established in the accompanying declaration of BAT p.l.c. Company Secretary Caroline Ferland ("Ferland Decl."),[1] BAT p.l.c. is an investment holding company, incorporated under the laws of England and Wales, with its only office located in London, England. BAT p.l.c. is not an operating company and has never designed, manufactured, marketed, distributed or sold any products in California, in the United States, or anywhere else, including the Vuse-brand vaporizer devices (the "Products") that are the subject of Plaintiffs' complaint (the "Complaint").

Unable to allege sufficient facts to support personal jurisdiction over BAT p.l.c. directly, Plaintiffs ask the Court to impute to BAT p.l.c. the alleged forum contacts of its indirect subsidiary investments. Again, Plaintiffs fail to provide the Court with a factual basis to disregard publicly traded BAT p.l.c.'s corporate separateness from its indirect subsidiaries and, indeed, BAT p.l.c. does not control its subsidiaries' day-to-day operations, including with respect to the design, manufacture, marketing, distribution or sale of the Products, such that there is no factual basis to impute the indirect subsidiaries' alleged forum contacts to BAT p.l.c.

In short, BAT p.l.c. is not at home in California, BAT p.l.c. did not engage in any conduct in or directed at California, and BAT p.l.c. maintains corporate formalities with its indirect subsidiaries. Accordingly, and for the reasons set forth herein and in the accompanying Ferland Declaration, the Complaint should be dismissed as against BAT p.l.c. for lack of personal jurisdiction over the defendant.

**II.     STATEMENT OF FACTS**

The following section sets forth Plaintiffs' allegations against BAT p.l.c. (Section II.A) and facts

---

[1] When adjudicating a motion to dismiss brought pursuant to Rule 12(b)(2), the court may consider extrinsic evidence, including affidavits submitted by a defendant. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015).

1

DEFENDANT BAT P.L.C.'S NOTICE OF MOTION                    CASE NO. 3:25-cv-04521-TLT
AND MOTION TO DISMISS COMPLAINT
KL3 3754824.5

concerning BAT p.l.c. established by the Ferland Declaration (Sections II.B-D).

### A. Plaintiffs' Complaint Alleges That BAT p.l.c. Is A Foreign Corporation, But Does Not Allege Specific Contacts Between California And BAT p.l.c.

Plaintiffs allegedly are California residents who purchased the Products in reliance on claims by the "Defendants"—pled as an undifferentiated group—that the Products are carbon neutral. Compl. ¶¶ 1, 8. Plaintiffs allege in the Complaint that the "Defendants" "sell the Products to distributors and retailers throughout California" and "induc[ed] consumers to switch to and stick with [the Products] because of the brand's purported carbon neutral status." *Id.* ¶¶ 6, 19. Plaintiffs complain that the Products' carbon neutral status is false. *Id.* ¶ 4. On this basis, Plaintiffs assert claims against BAT p.l.c., among others, for alleged violations of California common law and consumer protection statutes, seeking to recover damages and equitable relief. *Id.* ¶¶ 106-58.

With respect to the few allegations in the Complaint specific to BAT p.l.c., Plaintiffs admit that BAT p.l.c. is incorporated and has its principal place of business in the United Kingdom. *Id.* ¶ 18. Plaintiffs allege that BAT p.l.c. "makes marketing statements . . . about the Products," *id.* ¶ 17, attributing to BAT p.l.c. certain investor reports and corporate communications on BAT p.l.c.'s website and two social media posts that refer to the Products' carbon neutral status. *Id.* ¶¶ 39-41. Plaintiffs (rightly) do not, however, allege that these statements by a UK holding company target or were directed at California consumers or even US consumers. To the contrary, the statements, which are reproduced in Plaintiffs' complaint, make no reference to the US or California at all, refer only to the "global" Vuse-brand's achievement of carbon neutral status, and do not offer any product for sale. *Id.*

Plaintiffs further plead in the Complaint that if the Court concludes that it cannot exercise jurisdiction over BAT p.l.c., the Court should find that co-defendants R.J. Reynolds Vapor Company ("RJRV"), R.J. Reynolds Tobacco Company ("RJRT"), and Reynolds America Inc. ("RAI") are "[the] agents or alter egos of BAT" such that their alleged forum contacts can be imputed to BAT p.l.c. *Id.* ¶ 19. In support, Plaintiffs assert only facts typical of a relationship between a holding company and its indirect subsidiaries,[2] including that BAT p.l.c. "reserves to itself certain key matters on which it alone may make

---

[2] Plaintiffs inaccurately allege that RAI is a direct subsidiary of BAT p.l.c. *See* Ferland Decl. ¶ 4; Compl. ¶ 17.

decisions including the Group's[3] business strategy, its budget, dividends and major corporate activities"; establishes "responsible marketing principles" and a "framework for the day-to-day operation of the Group's operating subsidiaries"; and refers to Vuse as "our" product and to RAI's offices in North Carolina as "our" offices on its website. *Id.* ¶ 19 (internal citations to BAT p.l.c. corporate communications and website omitted). Plaintiffs additionally allege that BAT p.l.c.'s indirect subsidiaries do not have boards of directors, several of RAI's former board members are on BAT p.l.c.'s board, RAI's CEO is on BAT p.l.c.'s management board, and RAI job applicants can apply for jobs through BAT p.l.c.'s corporate website. *Id.*

### B. BAT p.l.c. Is A United Kingdom Investment Holding Company Without Any Presence In California

As established by the Ferland Declaration, BAT p.l.c. is a United Kingdom investment holding company formed under the laws of England and Wales with its principal place of business in London, England. Ferland Decl. ¶¶ 1, 6. Its only office is in London. *Id.* ¶ 6. BAT p.l.c. does not have employees, bank accounts, property, or representatives in California; has never contracted to supply goods or services in California; has never appointed an agent for service of process in California; has never had a telephone listing or mailing address in California; and does not pay taxes in California. *Id.* ¶¶ 11-12, 14-21.

### C. BAT p.l.c. Does Not Design, Manufacture, Market, Distribute Or Sell Products In California Or Anywhere Else

BAT p.l.c. is not an operating company and does not design, manufacture, market, distribute or sell any products—including the Products at issue here—in California or anywhere else. *See* Ferland Decl. ¶¶ 3, 10. BAT p.l.c. also does not direct or control any of its subsidiaries with respect to the design, manufacture, marketing, distribution or sale of any products, *id.* ¶ 22, or derive revenue from the sale of any products. *Id.* ¶ 13. BAT p.l.c. is a publicly listed holding company engaged in the management of financial investments. *Id.* ¶ 3. Its income is from dividends and other financial payments, such as payment of interest and principal on loans by subsidiaries. *Id.* ¶ 13.

### D. BAT p.l.c. Maintains Corporate Formalities With Its Indirect Subsidiaries

BAT p.l.c. and RAI, RJRV and RJRT (together, the "Indirect Subsidiaries") are separate, distinct

---

[3] Plaintiffs admit that "Group" refers to BAT p.l.c. and "all its business throughout the world." *Id.* ¶ 19.

3

corporate entities. Contrary to the allegations of the Complaint, each Indirect Subsidiary has its own board of directors and officers; maintains its own separate accounts, records, and board minutes. Ferland Decl. ¶ 24. The Indirect Subsidiaries also submit tax filings separate from BAT p.l.c. *Id.* BAT p.l.c. has not and does not participate in the day-to-day operation of the Indirect Subsidiaries, nor does BAT p.l.c. exercise control over the Indirect Subsidiaries with respect to their products, if any, sold in the United States. *Id.* ¶ 25.

### III. LEGAL STANDARD

A federal district court sitting in diversity may exercise personal jurisdiction to the same extent as courts of general jurisdiction in the forum state. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). Because California's long-arm statute is "coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* (internal quotations and citations omitted); *see also* Cal. Code Civ. Proc. § 410.10. Under federal due process principles, this Court may exercise jurisdiction over a nonresident defendant only if the defendant has "minimum contacts" with California such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted).

"Personal jurisdiction takes two forms: general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Sinatro v. Mrs. Gooch's Nat. Food Mkts., Inc.*, 2023 WL 2324291, at *2 (N.D. Cal. Feb. 16, 2023) (Thompson, J.) (internal quotations and citation omitted). Plaintiffs bear the burden of establishing that the Court has personal jurisdiction under one of these forms over each defendant, and are "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys. Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); *see also Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir. 1987). Where a plaintiff's assertion of jurisdiction is based on "bare allegations in the face of specific denials," as is the case here, the complaint must be dismissed. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citation omitted).

### IV. ARGUMENT

The Complaint as to BAT p.l.c. should be dismissed for lack of personal jurisdiction. Plaintiffs' sparse allegations against BAT p.l.c. fail to meet their burden to plead a factual basis for either general

or specific personal jurisdiction over BAT p.l.c., and Plaintiffs cannot cure this fatal defect in their pleading because, as BAT p.l.c.'s declarant establishes, BAT p.l.c. neither is "at home" in California nor engages in conduct directed at California (or anywhere else) that could give rise to or relate to Plaintiffs' claims.

Likewise, Plaintiffs' allegations of interactions typical of a holding company and its indirect subsidiaries fail to provide the Court with a basis to impute the alleged forum contacts of BAT p.l.c.'s Indirect Subsidiaries to BAT p.l.c. and, as BAT p.l.c.'s declarant establishes, BAT p.l.c. maintains corporate formalities with its Indirect Subsidiaries such that there does not exist any basis to conclude that the entities' distinct corporate personalities no longer exist.

### A.   The Court Lacks General Jurisdiction Over Foreign Holding Company BAT p.l.c.

BAT p.l.c. is not subject to general personal jurisdiction in California. Only a corporation with contact "so continuous and systematic as to render [it] essentially at home in the forum State" can be subject to general personal jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted). Absent an "exceptional case," a corporation is deemed "at home" only in its state of incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).

As Plaintiffs concede, BAT p.l.c. is incorporated and has its principal place of business in the United Kingdom. Compl. ¶ 18; Ferland Decl. ¶ 6. The Complaint does not allege any "continuous and systematic general business contacts, that approximate physical presence in" California and that would be probative of general personal jurisdiction over BAT p.l.c. *Schwarzenegger v. Fred Marin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (internal quotations and citations omitted). Indeed, BAT p.l.c. does not have property, mailing addresses, employees, bank accounts, or representatives in California, nor is it registered to do business in California. BAT p.l.c. has never appointed an agent for service of process in California or contracted to supply goods or services in California. Ferland Decl. ¶¶ 14-20. Accordingly, BAT p.l.c. is not "at home" in California and is not subject to general personal jurisdiction. *See, e.g., Schwarzenegger*, 374 F.3d at 801 (court lacked general jurisdiction over nonresident defendant that did not do business in California and did not have contacts "that approximate physical presence" in California).

**B.     The Court Lacks Specific Jurisdiction Over BAT p.l.c., Which Does Not Design, Manufacture, Market, Distribute Or Sell The Products In California Or Anywhere Else.**

BAT p.l.c. is not subject to specific personal jurisdiction in California. The Ninth Circuit uses a three-part test to assess specific personal jurisdiction: (1) plaintiffs must prove that the non-resident defendant purposefully directed its activities or consummated some transaction in California, or otherwise purposefully availed itself of the privilege of conducting activities in California; (2) plaintiffs must show that their claims specifically arose out of or relate to those activities; and (3) if plaintiffs have demonstrated the first two prongs, the exercise of jurisdiction must be reasonable. *See Schwarzenegger*, 374 F.3d at 802. Plaintiffs fail to meet any of the three parts of this test.

Plaintiffs fail to allege with specificity that BAT p.l.c. engaged in any activities in, or directed at, California that gave rise or relate to Plaintiffs' false advertising claims. Plaintiffs' conclusory assertions that "the Court has specific personal jurisdiction over Defendants because they purposefully avail themselves of the California market" and "sell the Products to distributors and retailers throughout California," Compl. ¶ 19, are mere recitations of jurisdictional predicates inadequate to avoid dismissal on the pleadings for lack of jurisdiction. *See Amba Marketing Sys., Inc.*, 551 F.2d at 787 (affirming dismissal because "[plaintiff] could not simply rest on the bare allegations of its complaint, but rather was obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction").

Plaintiffs' few specific factual allegations against BAT p.l.c. do not resolve the inadequacy of the jurisdictional allegations because, even if true, they have nothing to do with California. Plaintiffs attribute to BAT p.l.c. investor reports and corporate communications on BAT p.l.c.'s website and two posts on social media containing statements concerning the "global" Vuse-brand's carbon neutral status. Compl. ¶¶ 39-41. Plaintiffs do not and cannot allege, however, that any of BAT p.l.c.'s alleged online communications contained references to California consumers, US consumers, or offers to purchase the Products. To the contrary, one of the Twitter posts cited in the Complaint concerns a Vuse-brand event that was held in London, England, referencing "London's #Thames" with an accompanying picture of the River Thames. *Id.* ¶ 39. This clearly cannot be viewed as targeting or intended to target Californians. The remaining Twitter post and website statements likewise characterize Vuse as a "global" brand without any reference to California consumers or sales in California (or the US). *Id*. ¶¶ 39-41. Courts

in the Ninth Circuit have repeatedly held that these types of passive online statements, without more, are inadequate to establish purposeful direction at California.

In *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir. 2007), for example, the Ninth Circuit found that even "sponsored web marketing for products that ended up in" the forum state, along with product advertisements in "various [] publications," are insufficient to establish personal jurisdiction over a parent company where there was no targeting of the jurisdiction. *Id.* at 459-60 ("[Parent's] website does not provide any direct means for purchasing parts or requesting services; it simply provides information on the various products manufactured by the [Parent] consortium and redirects potential customers to the appropriate subsidiary."). *See also Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1046 (N.D. Cal. 2018) ("A mere web presence or advertisements that incidentally may have made their way to the forum state are insufficient to establish specific personal jurisdiction without more substantial evidence of contacts with the state.") (internal quotations and citation omitted); *Facebook, Inc. v. Teachbook.com, LLC*, 2011 WL 1672464, at *3 (N.D. Cal. May 3, 2011 ("The fact that an essentially passive Internet advertisement may be accessible in the plaintiff's home state without 'something more' is not enough to support personal jurisdiction."); *Blockchain Game Partners, Inc. v. Gamedia, B. V.*, 2024 WL 4328836, at *6 (C.D. Cal. Sept. 9, 2024) (no specific jurisdiction where "[n]othing in [defendant's] press release could be viewed as targeting the California market; rather, it provides general information about the [product]"), *appeal dismissed*, 2025 WL 877524 (9th Cir. Jan. 13, 2025); *Pooka Pooka LLC v. Safari Beach Club*, 2013 WL 12203872, at *4-6 (N.D. Cal. Apr. 17, 2013) ("operation of a website potentially accessible by Californians," and use of Facebook, Twitter, and YouTube to promote defendants' business, does "not establish this court's personal jurisdiction over Defendants"). BAT p.l.c.'s alleged statements likewise did not target California in any way, did not provide any means for purchasing the Products from BAT p.l.c. and were merely references in investor and corporate communications to the carbon-neutral status of products manufactured and marketed by other entities in the BAT p.l.c. group of companies. The statements thus cannot provide a basis to establish specific personal jurisdiction over BAT p.l.c.

Not only are Plaintiffs' threadbare allegations inadequate on their face, but their inadequacy cannot be cured because, as BAT p.l.c.'s declarant explains, BAT p.l.c. has never engaged in any conduct

7

that could have given rise or relate to Plaintiffs' claims. BAT p.l.c. is an investment holding company, not an operating company, and has never designed, manufactured, marketed, distributed or sold the Products, or any other product, in California or anywhere else. Ferland Decl. ¶¶ 3, 10. Accordingly, because Plaintiffs' allegations fail to meet their burden to allege that BAT p.l.c. engaged in conduct directed at California that gave rise to or relates to Plaintiffs' claims, and BAT p.l.c. has submitted declaration evidence affirmatively establishing that BAT p.l.c. cannot and did not engage in any such conduct, BAT p.l.c. is not subject to the Court's specific personal jurisdiction and the Complaint as against BAT p.l.c. must be dismissed. *See Perez v. Indian Harbor Ins. Co.*, 613 F. Supp. 3d 1171, 1177 (N.D. Cal. 2020) (finding no specific jurisdiction where defendants' affidavit specifically denied plaintiff's threadbare allegations of purposeful availment in the forum state); *Sinatro*, 2023 WL 2324291, at *6 (no specific jurisdiction where defendant's affidavit denied that it distributed the product at issue); *see also Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 53 (N.D. Cal. 2020) (crediting defendant's "sworn and unrebutted declaration").[4]

### C. The Court Cannot Impute to BAT p.l.c. The Alleged Forum Contacts Of Its Separate And Distinct Indirect Subsidiaries.

Plaintiffs additionally fail to provide the Court with a factual basis to impute to BAT p.l.c. the alleged forum contacts of BAT p.l.c.'s Indirect Subsidiaries, and no such basis exists because BAT p.l.c. neither disregards corporate formalities with its Indirect Subsidiaries nor exerts control over their day-to-day operations, let alone dominates them to the point that they can be said to have no separate existence.

The mere allegation of a relationship between a parent company and its subsidiaries does not establish specific personal jurisdiction over the parent on the basis of a subsidiary's contacts with California. *See Sinatro*, 2023 WL 2324291, at *4 ("As a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's

---

[4] For all of these same reasons, the exercise of jurisdiction over BAT p.l.c. in this case also would be unreasonable. *Cf. Blockchain Game Partners, Inc.*, 2024 WL 4328836, at *6 ("As Plaintiff has not established the first prong of the specific jurisdiction test through purposeful direction or purposeful availment, the Court need not address the other elements of the specific jurisdiction analysis," namely whether plaintiff's claims arose out of defendant's activities or whether personal jurisdiction would be reasonable); *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 854 (N.D. Cal. 2022) ("[P]laintiff bears the burden of satisfying the first two prongs of the test. . . . If the plaintiff cannot satisfy either of the first two prongs, personal jurisdiction is not established in the forum state.").

ownership of the subsidiary"; finding no personal jurisdiction over parent company whose only contact with California was through an indirect subsidiary). To impute to a parent company the alleged forum contacts of its subsidiary on an "alter ego" theory, a plaintiff bears the burden to show "such unity of interest and ownership that the separate personalities [of the two entities] no longer exist" and "that failure to disregard [their separate identities] would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citations omitted) (alterations in original). Plaintiff must establish "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* (internal quotations omitted). Even where a parent company "is heavily involved in [a subsidiary's] operations," "exercises control over [a subsidiary's] overall budget," "establishes general human resources policies" for the subsidiary, "is involved in some hiring decisions," "operates information tracking systems," "ensures [its brand] is marketed consistently throughout the world," and "requires some [subsidiary] employees to report to [it]," such activity does not provide a basis to dispense with the separate entities' corporate form to impute to the parent alleged contacts of the subsidiary. *Id.* at 1074.

As with the "alter ego" test, to establish personal jurisdiction over a parent company on an "agency" theory, a plaintiff must allege facts demonstrating that "the parent company [has] the right to substantially control its subsidiary's activities" to the point that the subsidiary has no independent will. *Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1060 (N.D. Cal. 2022) (citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017)). "The nature of the control exercised by the parent over the subsidiary necessary to put the subsidiary in an agency relationship with the parent must be over and above that to be expected as an incident of the parent's ownership of the subsidiary and must reflect the parent's purposeful disregard of the subsidiary's independent corporate existence." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 542 (2000) ("[P]arent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy").[5] Courts in this

---

[5] The Supreme Court has expressly rejected the Ninth Circuit's earlier, more lenient test for whether a subsidiary is a parent company's agent for the purpose of exercising personal jurisdiction, finding that the Circuit's earlier test took an excessively "sprawling view" of general jurisdiction. *Daimler*

circuit have found that the same facts that are dispositive of an alter ego relationship are dispositive of a principal-agent relationship for the purposes of imputing contacts for personal jurisdiction. *See, e.g.*, *Apple Inc.*, 445 F. Supp. 3d at 53 ("Having held above that Plaintiff has not demonstrated alter-ego liability, the Court declines to reengage in the identical agency analysis."); *Hernandez*, 632 F. Supp. at 1060 (agency theory not met due to same pleading deficiencies as alter ego theory); *Williams*, 851 F.3d at 1025; *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 465-66 (N.D. Cal. 2019) (holding same).

Plaintiffs allege that BAT p.l.c. is the alter ego or agent of three separate Indirect Subsidiaries: RAI, RJRV, and RJRT. However, as discussed below, Plaintiffs fail to allege any facts that, even taken as true, would allow the Court to conclude that BAT p.l.c. "dictates every facet of [any of the Indirect Subsidiaries'] business[es]." And, as BAT p.l.c.'s declarant clarifies, there simply is no factual basis for this Court to conclude otherwise.

### 1. RAI is neither BAT p.l.c.'s alter ego nor agent

Plaintiffs' alter ego and agency theory as to RAI rests on eight allegations concerning BAT p.l.c.'s relationship with RAI that do no more than describe a typical relationship between an ultimate holding company for a global group of companies and its indirect subsidiaries and are insufficient to establish personal jurisdiction. *See* Compl. ¶ 19. Plaintiffs allege that (i) "BAT owns 100% of RAI, which is the parent company of RJRV and RJRT"; (ii) BAT acknowledges that "Vuse is one 'of [its] key brands'"; (iii) "BAT refers to RAI's offices in North Carolina as its U.S. offices";[6] (iv) "[s]everal of RAI's former board members are now BAT board members," and "RAI's CEO is on BAT's Management Board"; and (v) "Job applicants can submit applications to RAI positions" through BAT

---

*AG v. Bauman*, 571 U.S. 117, 134-36 (2014) (rejecting the "less rigorous test" which considered "whether the subsidiary performs services that are sufficiently important to the [parent] foreign corporation that . . . . the corporation's own officials would [otherwise] undertake to perform"). "Assuming [] that some standard of agency continues to be relevant to the existence of specific jurisdiction," the Ninth Circuit has since clarified that the relevant inquiry would be whether the parent exercises substantial control over the subsidiary's day-to-day activities and operations. *Williams*, 851 F.3d at 1024.

[6] Plaintiffs mischaracterize the web page cited in their Complaint, which does *not* state that BAT p.l.c.'s offices are RAI's North Carolina offices. Rather, the website notes the address of one of BAT p.l.c.'s indirect subsidiaries in the United States, namely RAI. *See* https://www.bat.com/contact-us/global-directory/united-states (cited at Compl. n.13). Indeed, BAT p.l.c. does not have any offices or employees in the United States. *See* Ferland Decl. ¶¶ 6, 15.

p.l.c.'s website. *Id.* These allegations do not remotely establish a unity of interest or pervasive control between the entities.

In fact, courts in this District have routinely rejected plaintiffs' attempts to impute jurisdictional contacts on far more significant allegations. *See, e.g.*, *Stewart v. Screen Gems–EMI Music, Inc.*, 81 F. Supp. 3d 938, 955-56 (N.D. Cal. 2015) ("equitable ownership, use of the same offices and employees . . . and identical officers and directors . . . , even when considered together, are not sufficient to support a finding of unity of interest"); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983-84 (N.D. Cal. 2016) (no personal jurisdiction over parent company where "evidence show[ed] only that [parent] wholly owns [subsidiary], the two entities have overlapping officers and directors, [parent] presents itself as one integrated company on its website and in government filings for marketing purposes, and [parent] has been involved in discrete business decisions of [subsidiary]"); *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1138–39 (C.D. Cal. 2015) ("[I]t is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary.") (citation omitted); *Shanghai Jinko Green Energy Enter. Mgmt. Co. v. Abalance Corp.*, 2025 WL 2105908, at *4 (N.D. Cal. July 28, 2025) (allegation that parent and subsidiary shared an address and phone number was insufficient to establish agency for purpose of imputing forum contacts). For the same reasons, Plaintiffs' allegations are not sufficient to establish agency for the purposes of finding personal jurisdiction over a parent company. *See, e.g.*, *Gardner*, 418 F. Supp. at 463 ("bare allegations" that defendant parent controlled subsidiary's hiring practices, production, marketing, budgeting, and capitalization were insufficient to establish personal jurisdiction through an agency theory).

Plaintiffs further allege that (vi) BAT p.l.c.'s board "reserves to itself" decision-making on certain "business strategy," "budget, dividends and major corporate activities"; (vii) BAT p.l.c.'s Management Board "oversee[s] the implementation" of "strategy and policies set by the Board" and "create[es] the framework" for operations of subsidiaries; and (viii) the Indirect Subsidiaries "must adopt BAT's 'standards of business conduct' and 'responsible marketing principles.'" *See* Compl. ¶ 19. Again, Plaintiffs' allegations that BAT p.l.c., as the ultimate parent, provides a high-level framework for certain big picture policies and principles is precisely the sort of parent-subsidiary relationship that courts in this Circuit routinely find does not constitute an alter ego or agency relationship. *See Ranza*, 793 F.3d

11

at 1073-74 (no alter-ego relationship where parent company is "heavily involved in [subsidiary's] operations"; "exercises control over [subsidiary's] overall budget"; "formulat[es] [] general business policies and strategies applicable to its subsidiaries"; "establishes general human resource policies"; and "ensures the [parent's] brand is marketed consistently throughout the world"); *see also Moody v. Charming Shoppes of Delaware, Inc.*, 2008 WL 2128955, at *7 (N.D. Cal. May 20, 2008) ("[T]he parent company is well within its rights to delineate goals the subsidiary must accomplish and enforce the same by creating a hierarchy with accountability"); *Gardner*, 418 F. Supp. at 463 ("A parent's involvement in 'macro-management issues'" does not satisfy the alter-ego test or establish agency); *Dorel Indus., Inc. v. Superior Ct.*, 134 Cal. App. 4th 1267, 1276 (2005) (to exercise personal jurisdiction over a non-resident parent company, "the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy"); *Shanghai Jinko Green Energy Enter. Mgmt*, 2025 WL 2105908, at *4 (allegations that parent company held "shareholder approval" over certain subsidiary corporate actions and that subsidiary was listed as "a 'controlled company' within the meaning of the Nasdaq listing rules" were insufficient to establish agency). Further, to the extent Plaintiffs assert that BAT p.l.c.'s reporting of its consolidated financials—which necessarily includes the financial results of subsidiaries—somehow evinces an alter ego relationship with RAI, (Compl. ¶ 19), this simply is not the law. *See Moody*, 2008 WL 2128955, at *7 ("[parent's] reporting on its subsidiaries' financial results does not establish the existence of an alter ego relationship").[7] Accordingly, Plaintiffs have failed to establish an alter ego or agency relationship between BAT p.l.c. and RAI.

In truth, and as BAT p.l.c.'s declarant explains, Plaintiffs cannot put forward any facts that would permit the Court to find that BAT p.l.c. "dictates every facet of" RAI's businesses or controls "routine matters of day-to-day operation." *Ranza*, 793 F.3d at 1074. The Indirect Subsidiaries are responsible for the day-to-day operations of their respective businesses. Ferland Decl. ¶ 25. BAT p.l.c. has never participated in the day-to-day operations of the Indirect Subsidiaries and does not have ultimate decision-

---

[7] Plaintiffs curiously suggest that statements made by the CEO of RAI concerning RAI's priorities in the United States are somehow indicative of an agency relationship between RAI and BAT p.l.c. *See* Compl. ¶ 19. Not so. Plaintiffs fail to explain how or why the activities of RAI, an American holding company, could or should implicate BAT p.l.c.

making authority concerning any of the Indirect Subsidiaries' products sold in the United States. *Id.* BAT p.l.c. and the Indirect Subsidiaries have separate boards, bank accounts, and business records, and maintain all corporate formalities. *Id.* ¶ 24. Plaintiffs, therefore, cannot overcome the defects in their alter ego theory and the Court cannot impute RAI's alleged California contacts to BAT p.l.c.[8]

### 2. RJRV & RJRT are neither BAT p.l.c.'s alter egos nor agents

Plaintiffs do not even attempt to allege with specificity that BAT p.l.c. has an alter ego or agency relationship with RJRV or RJRT. Apart from their conclusory assertion that "RJRV's [and] RJRT's . . . contacts with this forum should be imputed to BAT because they are the agents or alter egos of BAT," Plaintiffs do not offer a single specific allegation as to BAT p.l.c.'s relationship with these entities. And as described above, Plaintiffs' generalized allegations as to all of BAT p.l.c.'s subsidiaries as a whole do not demonstrate the requisite control to pierce the corporate veil and impute the subsidiaries' contacts to BAT p.l.c.

\* \* \*

In sum, Plaintiffs have not met and cannot meet their burden to provide the Court with a factual basis to exercise personal jurisdiction over BAT p.l.c., or to impute to BAT p.l.c. the alleged forum contacts of its Indirect Subsidiaries. BAT p.l.c. also has put forth indisputable evidence specifically denying Plaintiffs' bare allegations of personal jurisdiction. Accordingly, Plaintiffs' claims must be dismissed as to BAT p.l.c. pursuant to Rule 12(b)(2).[9]

## V.  CONCLUSION

For the foregoing reasons, all claims against Defendant BAT p.l.c. should be dismissed with prejudice for lack of personal jurisdiction over the defendant.

---

[8] BAT p.l.c. does not concede that RAI, or any of the Indirect Subsidiaries, is subject to personal jurisdiction in California and calls the Court's attention to RAI's concurrently filed motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).

[9] Even if this motion is not granted, the Court should dismiss the Complaint for failure to state a claim under Rule 12(b)(6) for the reasons cited in the concurrently filed motion filed by RJRV and RJRT. Joinder is permitted where, as here, parties are similarly situated and independent filings would be redundant. *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1151-52 (C.D. Cal. 2016). If the Court dismisses these claims against RJRT and RJRV, it must also dismiss the claims as to BAT p.l.c., and any independent briefing would be redundant. BAT p.l.c. does not, in joining the motion, waive its argument that it should be dismissed for lack of personal jurisdiction.

| | |
|---|---|
| Dated: September 16, 2025 | Respectfully Submitted, |

By: */s/ Benjamin C. Rubinstein*
Benjamin C. Rubinstein (*pro hac vice*)
Maxwell D. Herman (*pro hac vice*)
HERBERT SMITH FREEHILLS KRAMER NEW YORK LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: Benjamin.Rubinstein@hsfkramer.com
　　　　Maxwell.Herman@hsfkramer.com

BOBBIE R. BAILEY, State Bar No. 159663
EDWARD MARTINOVICH, State Bar No. 237844
LEADER BERKON COLAO & SILVERSTEIN LLP
445 South Figueroa Street, Suite 2980
Los Angeles, CA 90071
Telephone: (213) 234-1750
Facsimile: (213) 234-1747
Email: bbailey@leaderberkon.com
　　　　emartinovich@leaderberkon.com

*Attorneys for Defendant British American Tobacco p.l.c.*