1  JONES DAY
   Darren K. Cottriel (State Bar No. 184731)
2  dcottriel@jonesday.com
   Tyler Fields (State Bar No. 341037)
3  tfields@jonesday.com
   3161 Michelson Drive, Suite 800
4  Irvine, CA 92612.4408
   Telephone:   +1.949.851.3939
5  Facsimile:   +1.949.553.7539

6  Patrick Haney (State Bar No. 266399)
   phaney@jonesday.com
7  51 Louisiana Avenue, N.W.
   Washington, DC 20001.2113
8  Telephone:   +1.202.879.3939
   Facsimile:   +1.202.626.1700

9

10 *Attorneys for Defendants*
   *R.J. Reynolds Vapor Company,*
   *R.J. Reynolds Tobacco Company, and*
11 *Reynolds American Inc.*

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                        SAN FRANCISCO DIVISION

15

16                                          Case No. 3:25-cv-04521-TLT

17 VANESSA BELL, DESTINEY MURRAH,           **REYNOLDS DEFENDANTS'**
   and SEAN NUGENT, individually and as the **NOTICE OF MOTION AND**
18 representatives of a class of similarly situated **MEMORANDUM OF POINTS AND**
   persons,                                 **AUTHORITIES IN SUPPORT OF**
19                                          **MOTION TO DISMISS COMPLAINT**
                                            **FOR FAILURE TO STATE A CLAIM**
20              Plaintiffs,
                                            *[Concurrently filed with Request for Judicial*
21        v.                                *Notice, Declaration of Darren K. Cottriel,*
                                            *Exhibits, and [Proposed] Orders]*
22 R.J. REYNOLDS VAPOR COMPANY,
   R.J. REYNOLDS TOBACCO COMPANY,           Date:   February 3, 2026
23 REYNOLDS AMERICA INC., and               Time:  2:00 PM
   BRITISH AMERICAN TOBACCO P.L.C.,         Place:  Courtroom 9, 19th Floor
24                                          Judge:  Honorable Trina L. Thompson
              Defendants.
25                                          Complaint Filed: May 28, 2025

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2

TO THE COURT AND ALL PARTIES OF RECORD:

3

PLEASE TAKE NOTICE that on February 3, 2026, at 2:00 PM, or as soon thereafter as the

4

matter may be heard before the Honorable Trina L. Thompson, in Courtroom 9, 19th floor,

5

Defendants R.J. Reynolds Vapor Company, R.J. Reynolds Tobacco Company, and Reynolds

6

American Inc. (collectively, "Reynolds") will and hereby do move to dismiss Plaintiffs' Complaint

7

for failure to state a claim upon which relief can be granted. Reynolds brings this motion under

8

Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

9

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points

10

and Authorities in support thereof, the accompanying Request for Judicial Notice, any reply

11

memorandum Reynolds may file, any arguments of counsel, and any other matter that the Court

12

deems appropriate.

13

Dated: September 16, 2025                    Respectfully submitted,

14

JONES DAY

15

*/s/ Darren K. Cottriel*

16

Darren K. Cottriel

17

*Attorney for Defendants*
*R.J. Reynolds Vapor Company,*

18

*R.J. Reynolds Tobacco Company, and*
*Reynolds American Inc.*

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................. 1

STATEMENT OF THE ISSUE TO BE DECIDED ............................................ 3

STATEMENT OF FACTS .................................................................................. 3

   A.  The Reynolds Defendants .......................................................................... 3

   B.  The Vuse brand secures independent certification as carbon neutral ................. 3

   C.  Plaintiffs' allegations ................................................................................ 6

STANDARD ........................................................................................................ 9

ARGUMENT ...................................................................................................... 10

I.  All of Plaintiffs' claims fail, because Plaintiffs do not and cannot plausibly allege that the challenged representations are false or deceptive. (Counts 1–6) ...................................... 10

   A.  Plaintiffs fail the reasonable-consumer test, because a significant portion of reasonable consumers would not be deceived by *true* representations that Vuse had been independently certified as carbon neutral. ................................ 11

      1.  It is undisputed that Vuse was independently certified as carbon neutral. ................ 11

      2.  Plaintiffs' disagreement with *Verra* as to specific carbon-offset projects does not render *Defendants'* representations false or misleading. ........................ 13

         a.  Plaintiffs do not plausibly allege that reasonable consumers would believe that Defendants *themselves* verified the carbon-offset benefits yielded by the underlying forestry projects. ................................................ 13

         b.  The FTC's Green Guides, which are codified into California law, provide a complete defense to companies that make environmental representations supported by a reasonable basis—which is all that Plaintiffs allege here .............. 15

      3.  Plaintiffs' passing mentions of a fraudulent-omission theory fail. .............................. 20

   B.  Plaintiffs fail Rule 9(b)'s heightened pleading requirement, because they do not allege fundamental aspects of their fraud-based claims .................................... 21

II.  Plaintiffs' UCL and common-law claims fail for additional reasons. (Counts 2, 4–6) .......... 22

   A.  Plaintiffs fail to state a claim under any prong of the UCL. (Count 2) ............................... 22

   B.  Plaintiffs fail to state a claim for breach of an express or implied warranty. (Counts 4–5) ................................................................................ 23

   C.  Plaintiffs fail to state a claim for unjust enrichment or quasi-contract. (Count 6) ............. 24

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ahern v. Apple*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................. 21

*Aloudi v. Intramedic Research Group, LLC*,
No. 15-cv-882, 2015 WL 4148381 (N.D. Cal. July 9, 2015) ................................ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................... 3, 9, 20, 22

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .............................................................................. 24

*Babaian v. Dunkin' Brands Group, Inc.*,
No. 17-cv-4890, 2018 WL 11445614 (C.D. Cal. Feb. 16, 2018) ......................... 21

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................ 9, 12, 13, 22

*Bodenburg v. Apple Inc.*,
146 F.4th 761 (9th Cir. 2025) ............................................................................ 10

*Bodenburg v. Apple Inc.*,
No. 23-cv-04409, 2024 WL 6084050 (N.D. Cal. May 8, 2024) ............................. 4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......................................................................................... 12

*Conde v. Open Door Marketing, LLC*,
223 F. Supp. 3d 949 (N.D. Cal. 2017) ................................................................. 6

*Cortez v. Handi-Craft Co., Inc.*,
No. 4:24-cv-3782, 2025 WL 1452561 (N.D. Cal. Apr. 29, 2025) ........................ 20

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ........................................................................... 9, 21

*Dawson v. Better Booch, LLC*,
716 F. Supp. 3d 949 (S.D. Cal. 2024) ................................................................. 14

*Dinan v. SanDisk LLC*,
844 F. App'x 978 (9th Cir. 2021) ....................................................................... 16

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) ........................................................................... 22

*Durell v. Sharp Healthcare*,
108 Cal.Rptr.3d 682 (Cal. Ct. App. 2010) ......................................................... 24

*Dwyer v. Allbirds, Inc.*,
  598 F. Supp. 3d 137 (S.D.N.Y. 2022) .................................................................... 15

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) .............................................................. 11, 13, 14

*FTC v. Johnson*,
  96 F. Supp. 3d 1110 (D. Nev. 2015) ...................................................................... 18

*Gedalia v. Whole Foods Mkt. Servs., Inc.*,
  53 F. Supp. 3d 943 (S.D. Tex. 2014) ...................................................................... 14

*Gudgel v. Clorox Co.*,
  514 F. Supp. 3d 1177 (N.D. Cal. 2021) .................................................................. 10

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) .................................................................. 22

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) .................................................................................. 20

*In re Arris Cable Modem Consumer Litig.*,
  No. 17-CV-01834, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............................. 21

*In re Nexus 6P Prods. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) .................................................................... 24

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................................. 9

*Kwan v. SanMedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017) ................................................................................ 19

*Lee v. Canada Goose US, Inc.*,
  No. 20-cv-9809, 2021 WL 2665955 (S.D.N.Y. June 29, 2021) ............................. 15

*McMahon v. Take-Two Interactive Software, Inc.*,
  745 F. App'x 786 (9th Cir. 2018) ........................................................................... 23

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) ............................................................................. *passim*

*Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*,
  691 F. Supp. 3d 1113 (N.D. Cal. 2023) .................................................................. 24

*Naimi v. Starbucks Corp.*,
  798 F. App'x 67 (9th Cir. 2019) .............................................................................. 22

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*,
  133 Cal.Rptr.2d 207 (Cal. Ct. App. 2003) ............................................................. 19

*Phillips v. Brooklyn Bedding LLC*,
   No. 23-cv-03781, 2024 WL 2830663 (N.D. Cal. Mar. 28, 2024)........................................ 24

*Sanchez v. Walmart Inc.*,
   733 F. Supp. 3d 653 (N.D. Ill. 2024) ............................................................................ 14, 15

*Snapkeys, Ltd. v. Google LLC*,
   442 F. Supp. 3d 1196 (N.D. Cal. 2020) .............................................................................. 22

*Strumlauf v. Starbucks Corp.*,
   192 F. Supp. 3d 1025 (N.D. Cal. 2016) .............................................................................. 23

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l. Inc.*,
   83 F. Supp. 3d 855 (N.D. Cal. 2015) ............................................................................ 23, 24

*Valentine v. Crocs, Inc.*,
   783 F. Supp. 3d 1204 (N.D. Cal. May 19, 2025) ................................................................. 23

*Weinstat v. Dentsply Int'l, Inc.*,
   103 Cal.Rptr.3d 614 (Cal. Ct. App. 2010) .......................................................................... 10

*Whiteside v. Kimberly Clark Corp.*,
   108 F.4th 771 (9th Cir. 2024).............................................................................................. 16

**STATUTES & REGULATIONS**

Cal. Bus. & Prof. Code § 17200 ............................................................................................ 22

Cal. Bus. & Prof. Code § 17580.5 ................................................................................... 16, 20

16 C.F.R. § 260.1 .................................................................................................................. 16

16 C.F.R. § 260.2 ...................................................................................................... 16, 17, 18

16 C.F.R. § 260.4 .................................................................................................................. 19

16 C.F.R. § 260.5 ........................................................................................................... 19, 20

16 C.F.R. § 260.6 ...................................................................................................... 16, 17, 19

**RULES**

Fed. R. Civ. P. 8 ................................................................................................................... 22

Fed. R. Civ. P. 9(b) ........................................................................................................ *passim*

Fed. R. Civ. P. 12 ............................................................................................................... 3, 9

1

**INTRODUCTION**

2     This case is about whether Defendants misled consumers by stating that a brand was

3  "carbon neutral," when independent third-party organizations had in fact certified that brand as

4  carbon neutral. Plaintiffs *admit* that Defendants bought carbon-offset credits verified by an

5  independent organization as supporting certain forestry projects.[1] And Plaintiffs do not dispute that

6  a second organization then certified—based in part on those credits—that the brand had become

7  carbon neutral. But Plaintiffs claim it was false for Defendants to *say* the brand was carbon neutral,

8  because Plaintiffs disagree with those independent organizations as to the emissions reductions

9  generated by some of the underlying forestry projects. In doing so, Plaintiffs advance one side of a

10  scientific and policy debate within the carbon-offset industry, and seek to use it to hold Defendants

11  liable for *true* statements. This effort fails as a matter of law.

12     Stepping back, here is what happened—based on Plaintiffs' own allegations and judicially

13  noticeable materials. Defendants are R.J. Reynolds Vapor Company, R.J. Reynolds Tobacco

14  Company, and Reynolds American Inc. (collectively, "Reynolds")—along with RAI's indirect

15  parent, British American Tobacco p.l.c. It is undisputed that the relevant Defendants have taken

16  significant steps to reduce the environmental impact of their products, including the Vuse-brand

17  products at issue here. They cut Vuse's direct carbon emissions nearly in half by switching to sea-

18  based shipping. They also drastically reduced the plastic in Vuse packaging. To offset the remainder

19  of Vuse's emissions, they commissioned an independent analysis of Vuse's carbon footprint and

20  then purchased carbon-offset credits certified by Verra, a leading organization with expertise on

21  this complex issue. Verra uses exhaustive processes to validate the carbon-offset projects in which

22  it supports investments. Relying on those processes, it is undisputed that Defendants invested in

23  over 500,000 carbon-offset credits through Verra—equivalent to roughly a half-million metric tons

24  of $CO_2$ removed from the atmosphere. *Another* expert organization, Vertis Environmental Finance

25  Ltd., then certified that Vuse had become carbon neutral.

26  ──────────────

27  [1]  The Complaint fails to allege which Defendant took certain actions. For simplicity, this
Memorandum uses "Defendants" where the Complaint is unclear. Defendants do not, in so
doing, admit that any particular Defendant took the relevant action. As explained in Reynolds

28  American Inc.'s ("RAI's") separate Motion to Dismiss for lack of personal jurisdiction, RAI
had no role whatsoever in the manufacture, marketing, or sale of the products at issue here.

Relying on Verra's validation procedures and Vertis's independent certification, the relevant Defendants announced the results of their efforts: that the Vuse brand had become carbon neutral. Plaintiffs point to statements in press releases, an investor report, and website and social-media posts (but not on any product packages). These statements also consistently explained the basis for that representation: that Vuse's carbon neutrality had been certified by a third party.

What Defendants said was thus *true*. And that fact forecloses all of Plaintiffs' claims. Plaintiffs seek to make Defendants' statements *untrue* simply by asserting that some of the Verra-supported forestry projects in which they invested did not yield the benefits that Verra certified. But even in Plaintiffs' telling, all of Defendants' "carbon neutral" representations were made long before any questions had been raised as to those projects. Indeed, Plaintiffs do not allege that Defendants made any "carbon neutral" statements after November 2024, when a media article for the first time questioned the benefits of one of the Verra-supported projects. In any event, Plaintiffs' disagreement with *Verra's* conclusions does not make *Defendants'* statements false or misleading.

After all, the law requires Plaintiffs to show "a *probability* that a *significant portion* of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (cleaned up; emphases added). But Plaintiffs do not plausibly allege that a significant number of reasonable consumers would have believed Defendants were representing that they had *themselves* confirmed that the underlying forestry projects yielded the benefits that Verra had determined. Nor *can* they make that allegation. Courts have consistently dismissed—at the pleadings stage—similar efforts at holding companies liable for *accurately* stating that they had secured a third party's certification of some quality. Additionally, regulations promulgated by the Federal Trade Commission—and codified as a defense under California law—allow companies to make environmental claims that are based on reliable scientific evidence. And Plaintiffs' own allegations confirm that that is exactly what Defendants did, by relying on the rigorous processes backing the Verra-supported projects.

Plaintiffs thus cannot plausibly allege that reasonable consumers were misled. And this only becomes clearer under the heightened Rule 9(b) standard that governs all of their claims. Several of their causes of action also fail for additional reasons. The Complaint should be dismissed.

**STATEMENT OF THE ISSUE TO BE DECIDED**

Plaintiffs seek to hold Defendants liable for allegedly deceiving Vuse consumers by stating that Vuse products were "carbon neutral." But it is undisputed that Defendants obtained third-party certifications that the products were, in fact, carbon neutral. Does the Complaint state a claim upon which relief can be granted—particularly when held to Rule 9(b)'s heightened pleading standards?

**STATEMENT OF FACTS [2]**

**A.    The Reynolds Defendants**

R.J. Reynolds Vapor Company ("RJRV") manufactures vapor products under the Vuse brand name, and distributes them for resale. Compl. ¶ 14. R.J. Reynolds Tobacco Company ("RJRT") manufactures Vuse products on RJRV's behalf. *Id.* ¶ 15.[3]

RJRV and RJRT are indirect subsidiaries of Reynolds American Inc. ("RAI"), which Plaintiffs recognize "is a holding company." Compl. ¶ 16. RAI, in turn, is an indirect subsidiary of British American Tobacco p.l.c. ("BAT"). As explained in the separate Motions to Dismiss under Rule 12(b)(2) that RAI and BAT are filing contemporaneously with this Motion, neither RAI nor BAT is subject to personal jurisdiction in this Court. And RAI has no involvement in the manufacture, marketing, or sale of Vuse products.

**B.    The Vuse brand secures independent certification as carbon neutral**

Vuse's certification as carbon neutral was the culmination of a significant undertaking. Defendants directly reduced the Vuse brand's carbon emissions—"by nearly half"—by transitioning most international shipments from air freight to sea freight. Vuse, *Sustainability FAQs* (screenshot at Compl. p. 16). Defendants also significantly reduced Vuse's use of plastic packaging materials, "keep[ing] approximately 165,000 pounds of plastic out of landfills." *Id.*

To mitigate the remainder of Vuse's carbon impact, Defendants performed a "Life Cycle Assessment" (or "LCA"). *Id.* An LCA involves "assessing the carbon impact and associated

---

[2]    For purposes of this Motion, Reynolds assumes the truth of Plaintiffs' allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3]    Plaintiffs misquote the source that they cite on this point. It states that RJRT manufactures Vuse products on RJRV's behalf, not the other way around. RAI, *Supplier Guide* at 4, https://tinyurl.com/nu9nk6vd (cited at Compl. ¶ 15 n.8).

1    environmental impact for a product through all stages of its lifecycle—from material pre-processing

2    and manufacturing, to distribution, use, and disposal." *Id.* As explained on the Vuse website (and

3    as included in a screenshot in the Complaint), the Vuse LCA "was prepared in accordance with …

4    the leading international standard on life cycle assessments," and "was calculated, assured, and

5    validated by independent third parties." *Id.* (screenshot at Compl. p. 16).

6         Based on the LCA results, Defendants bought credits to offset the Vuse brand's remaining

7    carbon emissions. *Id.*; Compl. ¶ 48. As Plaintiffs explain, carbon offsetting entails a company's

8    "purchas[ing] carbon 'credits' in environmental projects such as forest preservation, renewable

9    energy initiatives, and reforestation efforts," which "offset emissions from the production and use

10   of [the company's] products." Compl. ¶ 31. The verification of these credits—i.e., confirming that

11   they reflect real reductions in carbon emissions or real removal of carbon from the atmosphere—is

12   a key component of the carbon-offset system. But most companies cannot themselves investigate

13   a carbon-offset project and determine the amount of carbon emissions it offsets. Doing so would

14   require vast amounts of time and money, and would necessitate the company's becoming an expert

15   in what Plaintiffs recognize as the "technical[ly] complex[]" subject of carbon accounting. *Id.* ¶ 35.

16        Instead, companies like Defendants rely on independent entities with the expertise and

17   resources needed to verify the impact of carbon-offset projects. Defendants bought the credits at

18   issue here from projects certified and credited by one such organization: Verra, "a nonprofit

19   organization … that administers and manages the Verified Carbon Standard (VCS) Program."

20   Compl. ¶ 47. That program "is the world's most widely used greenhouse gas (GHG) crediting

21   program." Decl. of Darren K. Cottriel ("Cottriel Decl."), Ex. E. "VCS projects have reduced or

22   removed more than one billion tons of carbon and other GHG emissions from the atmosphere." *Id.*[4]

23        As Plaintiffs recognize, "[c]ompanies buying credits from Verra-listed projects rely on

24   Verra as the third-party validator." Compl. ¶ 47. And Verra implements a painstaking process for

---

25   [4]   As explained in the Reynolds Defendants' Request for Judicial Notice, the Court can take

26        judicial notice of Verra materials, because they are "readily accessible to the public" on Verra's website "and not subject to reasonable dispute." *Bodenburg v. Apple Inc.*, No. 23-cv-04409,

27        2024 WL 6084050, at *5 (N.D. Cal. May 8, 2024) (Thompson, J.), *aff'd*, 146 F.4th 761 (9th Cir. 2025). These materials are also incorporated by reference into the Complaint, as

28        Defendants' representations regarding Vuse's carbon neutrality—based on Verra's verification—form the basis for Plaintiffs' claims. *Id.*; *see, e.g.*, Compl. ¶ 47.

validating the carbon reductions and removals secured by projects it supports. Among other things:

**Standards.** Verra maintains "rules and requirements that projects must follow in order to be certified." Cottriel Decl., Ex. E. Its Verified Carbon Standard relies upon strict methodologies for "quantify[ing] [greenhouse gas] emission reductions and/or carbon dioxide removals." Cottriel Decl., Ex. F. And those methodologies "undergo public stakeholder consultation and a comprehensive review process, including a review by a group of independent experts." *Id.*

**Audits.** Every project is "subject to independent auditing by both Verra staff and qualified third parties." Cottriel Decl., Ex. E. The auditors "determine[] whether a project meets all [Verra] rules and requirements," and confirm that the claimed outcomes were "achieved and quantified" appropriately. Cottriel Decl., Ex. G. Verra also audits the auditors, using a 17-factor standard. *Id.*

**Public comment.** All project information is posted publicly on the Verra Registry. Cottriel Decl., Ex. H. Verra also facilitates a public-comment period, "during which anyone can indicate whether they believe the project meets VCS Program standards." Cottriel Decl., Ex. E. All comments "enter the Verra Registry and must be considered by the project leads." *Id.*

**Buffer pool.** As a backstop, Verra maintains a "global buffer pool." Cottriel Decl., Ex. I (under "What is permanence?"). "[A]ll land-based projects" must put credits in that pool. *Id.* If the credits associated with a project are later found invalid, buffer credits can be issued to entities that invested in that project, ensuring that the credits they bought are tied to genuine carbon offsets. *Id.*

Defendants purchased Verra-registered and -certified credits associated with a number of carbon-offset projects. Compl. ¶¶ 48, 50, 59, 67, 75. In selecting those projects, Defendants relied on another industry leader, Vertis Environmental Finance Ltd. *Sustainability FAQs* (screenshot at Compl. p. 16). Vertis, which has operated in the carbon-offset market for nearly three decades, assists companies in selecting and procuring carbon-offset credits. Cottriel Decl., Ex. J.

Plaintiffs' claims center on a subset of the projects in which Defendants invested between 2021 and 2024: the Guanaré Forest Plantations Project (in Uruguay), the Yunnan Xishuangbanna Improved Forest Management Project (in China), the Hubei Hongshan IFM Project (in China), and the Inner Mongolia Wu'erqihan IFM Project (in the Inner Mongolia Autonomous Region of China).

1  Compl. ¶¶ 48, 50–81. Each project is listed on Verra's registry.[5] Documents laying out the

2  methodologies and accounting underlying these projects are available through that registry. *Id.*

3     Plaintiffs admit that—as Verra's registry confirms—Defendants "purchased and retired"

4  offset credits in each of these projects: 186,990 credits in the Guanaré project; 98,000 in the Yunnan

5  Xishuangbanna project; 91,530 in the Hubei Hongshan project; and 48,647 in the Inner Mongolia

6  project. Compl. ¶¶ 50, 59, 67, 75.[6] *Id.* All told, along with their investments in other projects,

7  Defendants purchased 501,815 credits "in relation to the [Vuse] Products"—"equivalent to

8  approximately 0.5 million metric tons of $CO_2$." *Id.* ¶ 48. To put that in perspective, it offsets a year's

9  worth of emissions by 117,000 gas-powered cars. EPA, *Greenhouse Gas Equivalencies Calculator*

10  (last accessed August 21, 2025), https://tinyurl.com/ar52wn3w (select "Emissions data"; input

11  501,815 into the "Carbon Dioxide" field; select "Convert data").

12     On the basis of these efforts—including the carbon-offset credits purchased from Verra-

13  certified projects—Vertis "independently validated" Vuse's carbon neutrality. Cottriel Decl., Ex.

14  A at 45 ("2021 ESG Report"). That was the fact that BAT first announced in May 2021.

15     **C.  Plaintiffs' allegations**

16     Plaintiffs are three adult consumers who allegedly purchased Vuse products. Compl. ¶¶ 11–

17  13, 46.[7] They claim that they were misled by statements that BAT, RJRT, and RJRV made

18  regarding the Vuse brand's certification as carbon neutral. E.g., *id.* ¶¶ 4–5. The challenged

19  statements all occurred *after* Vertis independently verified Vuse's carbon neutrality, and *before* any

20  questions were raised as to that determination. And the statements were consistently grounded in

21  Vertis's independent verification. Specifically, Plaintiffs allege that (all emphases added):

22

23  [5]  Cottriel Decl., Exs. K–N

24  [6]  A credit is "retired" when it is "used to compensate for emissions," at which point it is "taken out of circulation and can no longer be sold." Cottriel Decl., Ex. I.

25  [7]  Many putative class members' claims are subject to arbitration agreements requiring individual
26  arbitration. But because "putative class members are not parties to the suit" when no class has been certified, "the enforceability of the[ir] arbitration agreement[s]" is "not yet properly before
27  the Court." *Conde v. Open Door Marketing, LLC*, 223 F.Supp.3d 949, 961 (N.D. Cal. 2017). Reynolds reserves all rights with regard to the arbitration of such claims, and will move to
28  compel arbitration and stay non-arbitrable claims at the appropriate time (and depending on the class Plaintiffs ultimately seek to certify).

In a May 28, 2021, press release announcing that "Vuse has become the first global carbon neutral vape brand," BAT explained the basis for this representation: "Vuse's carbon neutrality has been **independently validated by Vertis based on product Life Cycle Assessment data provided by an independent third party**." Cottriel Decl., Ex. B. ("May 2021 Press Release") (partially quoted at Compl. ¶ 39). BAT also explained that "Vuse's carbon neutrality has been delivered through carbon offset through reforestation projects." *Id.*; *see also* Compl. p. 13 (screenshot of tweet from BAT executive, noting that Vuse had "secure[d] carbon neutral status").

BAT's 2021 ESG Report (i.e., Environmental, Social, Governance) again noted that Vuse had achieved "[c]arbon neutral **certification**." 2021 ESG Report at 2 (quoted at Compl. ¶ 40). In a "Spotlight" section, the report explained that "Vuse's carbon neutrality has been **independently validated by Vertis**." *Id.* at 45; *see also* Compl. p. 12 (screenshot of tweet calling Vuse "the first global, **independently certified**, carbon neutral vaping brand" and linking to the ESG Report).

BAT continued touting Vuse's status as the "first global, **independently certified**, carbon neutral vaping brand" in subsequent press releases. Cottriel Decl., Ex. C ("June 2022 Press Release") (quoted at Compl. ¶ 40 n.31); *see also* Cottriel Decl., Ex. O ("Vuse is … the first global carbon neutral vape brand." (quoted at Compl. ¶ 40 n.31)). The June 2022 Press Release linked to an earlier one from July 2021, which again explained that "Vuse's carbon neutrality was **certified by BAT's sustainability partner, Vertis**." Cottriel Decl., Ex. D ("July 2021 Press Release"); *see also* Compl. at p. 12 (screenshot of tweet calling Vuse "the first global #carbonneutral #vape brand" and linking to the July 2021 Press Release).

On the Vuse website that Plaintiffs allege is maintained by RJRV and RJRT (Compl. ¶ 42), there was both a description of Vuse as "carbon neutral" and an explanation of what that meant. The website explained that carbon-offset credits can "be purchased in the marketplace and traded to businesses in an effort to reduce their carbon footprint." *Sustainability FAQs* (screenshot at Compl. p. 16). It also explained *how* Vuse's emissions were calculated: by "perform[ing] a[n] [LCA]" based on "the leading international standard," with that assessment **"calculated, assured, and validated by independent third parties."** *Id.* And it noted that Vertis had "used the assured LCAs and data to broker investments in carbon credits." *Id.*; *see also* Compl. at p. 15 (screenshot

1    of tweet, linking to the Vuse sustainability webpage); *id.* at pp. 16–17 (screenshots purportedly

2    from "Vuse's website," explaining steps taken to make Vuse "a more sustainable brand").

3        Despite claiming to have been misled by these representations, Plaintiffs do not dispute that

4    Vertis independently certified Vuse as carbon neutral. Nor do Plaintiffs dispute key facts underlying

5    Vertis's independent certification. Namely, they do not dispute the direct emissions reductions that

6    Vuse achieved. Nor do they dispute that, to offset Vuse's remaining emissions, Defendants

7    purchased the credits discussed above from Verra-certified projects. To the contrary, Plaintiffs

8    *admit* that Defendants purchased those credits. Compl. ¶¶ 50, 59, 67, 75.

9        Nevertheless, Plaintiffs allege that the representations regarding Vuse's certification as

10   "carbon neutral" were misleading because, based on Plaintiffs' own subjective "satellite and

11   geospatial analysis" of satellite imagery associated with the four projects discussed above, those

12   projects "do not provide genuine, additional carbon reductions." Compl. ¶¶ 49, 54, 62, 70, 78. They

13   claim this imagery shows that the Guanaré project would have been "financially viable …

14   independent of carbon offset funding," and that the Yunnan Xishuangbanna project, Hubei

15   Hongshan project, and Inner Mongolia project all supported areas facing a "low risk" of

16   deforestation. *Id.* ¶¶ 54, 63, 71, 80; *see generally id.* ¶ 4. Plaintiffs' sole independent support for

17   these opinions is a November 2024 media article reporting a different carbon-crediting entity's

18   assertion that one of the projects (in Guanaré) would not yield the benefits that Verra had attributed

19   to it. *Id.* ¶¶ 56–57 (citing Cottriel Decl., Ex. P ("Harvard Article")). As to the other three projects,

20   Plaintiffs rely on nothing but their own "satellite and geospatial analysis." *Id.* ¶¶ 62, 70, 78.

21       Plaintiffs do not allege that any Defendant made any "carbon neutral" representations *after*

22   the publication of that November 2024 article. As they allege, a BAT spokesperson explained at

23   the time of that report "that all Vuse communications around carbon neutrality were terminated in

24   December 2023." Compl. ¶ 45 (citing Cottriel Decl., Ex. Q ("Tobacco Giant Article")). And

25   although Plaintiffs assert that the Vuse website contained "carbon neutral" statements—and the

26   basis for those statements—until November 2024, they do not allege that Defendants made any

27   such representations after publication of the sole outside media story that they rely upon to question

28   any of the underlying projects' validity. Compl. ¶ 45; *id.* at pp. 16–17 (screenshots purportedly of

Vuse website in November 2023 and November 2024).

Plaintiffs' claims thus rest on the notion that, even though Defendants *did* purchase Verra-certified carbon credits, and even though Vertis *did* certify Vuse as carbon neutral, it was false or misleading for Defendants to *say* Vuse was carbon neutral—simply because Plaintiffs later formed a different opinion regarding the benefits yielded by certain projects in which Defendants invested. And they seek to hold Defendants responsible for making such representations *before* any questions were raised as to any of the projects. On this basis, they assert claims against all Defendants under California's Consumer Legal Remedies Act (the "CLRA"), Unfair Competition Law (the "UCL"), and False Advertising Law (the "FAL"); as well as claims for breach of an express warranty, breach of an implied warranty, and "unjust enrichment / quasi-contract." Compl. ¶¶ 106–58 (cleaned up). They seek to bring these claims on behalf of themselves and a class of all California residents who purchased any Vuse product after May 28, 2021. *Id.* ¶ 96.

## STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quot*ing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires Plaintiffs to "plead[] factual content" supporting a "reasonable inference that [Defendants] are liable for the misconduct alleged." *Id.* Plaintiffs cannot carry their burden with "naked assertions devoid of further factual enhancement," nor with allegations that "are 'merely consistent with' [Defendants'] liability." *Id.* (cleaned up).

Because all of Plaintiffs' claims "allege that [Reynolds] engaged in fraudulent conduct," they are also subject to Rule 9(b)'s heightened pleading requirement. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "Rule 9(b) demands" that Plaintiffs allege "the circumstances constituting the alleged fraud" with enough specificity "to give [Reynolds] notice of the particular misconduct … so that they can defend against the charge." *Id.* at 1124. (citation omitted). Plaintiffs thus must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (cleaned up).

1

**ARGUMENT**

2      All of Plaintiffs' claims fail, because Plaintiffs do not—and cannot—plausibly allege that

3  the challenged statements were false or misleading. They do not dispute the core point that those

4  statements communicated: Vuse had been certified as carbon neutral. And Plaintiffs' disagreement

5  with *Verra* as to the methodology or validity of some forestry projects underlying that certification

6  does not render *Defendants'* alleged representations deceptive. Plaintiffs cannot show that

7  reasonable consumers would have understood Defendants as claiming to have independently

8  verified the carbon-offset projects in which they invested—particularly when Defendants

9  consistently noted that Vuse's carbon neutrality had been verified by an independent entity with

10 expertise in this complex area. Courts have repeatedly dismissed claims like these that seek to hold

11 companies liable for relying on a third party's certification. And California law codifies FTC

12 regulations allowing companies to make environmental claims that have a reasonable scientific

13 basis. That is exactly what Defendants did.

14      These points doom all of Plaintiffs' claims. And their UCL and common-law claims fail for

15 other reasons, too.

16 **I.    All of Plaintiffs' claims fail, because Plaintiffs do not and cannot plausibly allege that
          the challenged representations are false or deceptive. (Counts 1–6)**

17
18      "To survive dismissal, each [of Plaintiffs'] claim[s] must pass two tests: (1) the 'reasonable

   consumer' test set forth in California case law, and (2) the heightened pleading standard set forth

19 in Fed. R. Civ. P. 9(b)." *Bodenburg v. Apple Inc.*, 146 F.4th 761, 768 (9th Cir. 2025) (affirming

20 this Court's dismissal of the plaintiffs' CLRA, UCL, and FAL); *see also Weinstat v. Dentsply Int'l,

21 Inc.*, 103 Cal.Rptr.3d 614, 626 (Cal. Ct. App. 2010) (explaining that breach-of-warranty claims

22 require an actionable misrepresentation); *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1188 (N.D.

23 Cal. 2021) ("[P]laintiff's failure to identify an actionable deception in the context of the 'reasonable

24 consumer' test also requires the dismissal of her unjust enrichment claim."); *supra* at 9 (explaining

25 that all of Plaintiffs' claims are subject to Rule 9(b)). Plaintiffs' claims fail both tests.

26

27

28

**A.      Plaintiffs fail the reasonable-consumer test, because a significant portion of reasonable consumers would not be deceived by *true* representations that Vuse had been independently certified as carbon neutral.**

Plaintiffs do not and cannot allege that a reasonable consumer would have been misled by the description of Vuse products as "carbon neutral." The "reasonable consumer" test requires Plaintiffs to "show that 'members of the public are likely to be deceived'" by the representation. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citations omitted). "This is not a negligible burden." *Moore*, 4 F.4th at 882. It is not enough for Plaintiffs to demonstrate "a mere possibility" that the "carbon neutral" statements "might conceivably be misunderstood by some few consumers viewing [them] in an unreasonable manner." *Id.* at 882 (cleaned up). The reasonable-consumer test "requires a *probability* that a *significant portion* of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (cleaned up; emphases added). "[A] plaintiff's unreasonable assumptions … will not suffice." *Id.* (citation omitted).

Plaintiffs cannot overcome the reasonable-consumer standard.

**1.      It is undisputed that Vuse was independently certified as carbon neutral.**

Start with the facts that Plaintiffs do *not* dispute—several of which they affirmatively *admit*.

***First,*** Plaintiffs do not dispute that Defendants directly—and significantly—reduced the Vuse brand's emissions. In particular, they do not deny that, by largely shifting to shipping by sea, Defendants cut Vuse's emissions "by nearly half." Compl. ¶ 42; *Sustainability FAQs* (screenshot at Compl. p. 16). Nor do they dispute that Defendants "removed unnecessary plastic wrap" from Vuse packaging, keeping "165,000 pounds of plastic out of landfills." *Id.*

***Second,*** Plaintiffs concede that "Defendants retired 501,815 carbon credits, through the voluntary carbon market, specifically in relation to the Products." Compl. ¶ 48. And they admit that Defendants bought credits associated with the four at-issue projects. *Id.* ¶¶ 48, 50, 59, 67, 75.

***Third,*** Plaintiffs admit that BAT's, RJRV's, and RJRT's alleged characterization of Vuse as "carbon neutral" was based on third parties' independent verification. They concede that the credits that Defendants bought were certified by Verra, whom companies "rely on … as the third-party validator" for carbon-offset claims. Compl. ¶¶ 47, 50, 59, 67, 75. They recognize that the at-

1   issue projects were administered under Verra's "Verified Carbon Standard (VCS) Program." *Id.*

2   ¶ 47. And they rely on Verra's registry, which sets forth the documentation showing that Verra had

3   substantiated the credits associated with each of the at-issue products at the time of the challenged

4   representations. *Id.* ¶¶ 50, 59, 67, 75; Guanaré Registry; Yunnan Xishuangbanna Registry; Hubei

5   Hongshan Registry; Inner Mongolia Registry. Plaintiffs also do not dispute that Defendants

6   determined the number of carbon offsets to purchase through a LCA that was conducted in

7   accordance with "the leading international standard" and that "was calculated, assured, and

8   validated by independent third parties." *Sustainability FAQs* (screenshot at Compl. p. 16). And they

9   do not dispute that, as Defendants consistently noted when highlighting Vuse's carbon neutrality,

10  this status had been "independently validated by Vertis," another third party. May 2021 Press

11  Release (partially quoted at Compl. ¶ 39); *supra* at 5–6.

12          ***Finally,*** Plaintiffs do not allege that any Defendant made any "carbon neutral" statements

13  *after* November 2024, when the sole articles upon which Plaintiffs rely were published. In fact,

14  they note a BAT spokesperson's explanation that all such statements "were terminated" nearly a

15  year earlier, in December 2023. Compl. ¶ 45. The only representations they point to after that date

16  are pre-existing statements that they say remained on the Vuse website until November 2024, and

17  that explained the basis for describing Vuse as "carbon neutral." *Id.*; *supra* at 7–8.[8]

18          In sum, Plaintiffs do not dispute that Defendants bought carbon-offset credits that were

19  validated by Verra, and that Vertis independently certified that those credits—combined with direct

20  reductions in the Vuse brand's emissions—rendered Vuse carbon-neutral. So when BAT, RJRV,

21  and RJRT purportedly announced that Vuse was "carbon neutral"—a determination that they

22  consistently noted had been "independently certified" by a third party (*supra* at 7–8)—they were

23  telling the truth. And they did not leave consumers to guess at what they meant by "carbon neutral":

24  They consistently explained *how* the brand had achieved carbon neutrality—including via "carbon

---

[8]  Because Plaintiffs do not allege that Defendants are currently representing that Vuse products are carbon neutral, they have no standing to seek prospective relief. Compl. ¶¶ 91–95; *id.* at p. 45. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (Article III standing requires an "injury [that] is '*certainly* impending'" (citation omitted)). Vague, conclusory allegations that Plaintiffs "face a real and tangible threat of future harm emanating from Defendants' [unidentified] ongoing conduct" (Compl. ¶ 92) are insufficient to establish standing. *Twombly*, 550 U.S. at 555–56.

offset through reforestation projects"—and explained that this status was "independently validated by Vertis based on product Life Cycle Assessment data provided by an independent third party." May 2021 Press Release (quoted at Compl. ¶ 39); *see also* 2021 ESG Report at 45 (cited at Compl. ¶ 40) (explaining the same points); *Sustainability FAQs* (screenshot at Compl. p. 16) (same).

Plaintiffs thus challenge *true* statements. To be sure, they insist that those straightforward and verified representations were "false," "misleading," "deceptive," "fraudulent," and so on. *E.g.*, Compl. ¶¶ 4, 9–10, 82, 86, 124. But those are just the sort of "labels and conclusions" that the Supreme Court has stressed "will not do." *Twombly*, 550 U.S. at 555 . Given all that Plaintiffs do not dispute, they do not and cannot plausibly allege that reasonable consumers were "likely to be deceived." *Ebner*, 838 F.3d at 965 (cleaned up; citations omitted).

### 2. Plaintiffs' disagreement with *Verra* as to specific carbon-offset projects does not render *Defendants'* representations false or misleading.

Against all of this, Plaintiffs try finding a way to claim that the challenged statements were false or misleading. Their theory of liability proceeds as follows: (1) based on Plaintiffs' own "satellite and geospatial analysis," four projects did not yield the carbon-offset benefits that Verra had determined (Compl. ¶¶ 54, 62, 70, 78); (2) given this, it was improper for those projects to be counted in calculating Vuse's carbon offset; and (3) it was therefore false and misleading for BAT, RJRV, and RJRT to say that Vuse products were carbon neutral. In other words, Plaintiffs' theory is that *Verra* (and, by extension, Vertis) was wrong about the carbon-offset credits, and therefore that *BAT, RJRV, and RJRT* misled consumers by relying on Verra's (and Vertis's) certification of the facts establishing the Vuse brand's carbon neutrality. This theory fails.

### a. Plaintiffs do not plausibly allege that reasonable consumers would believe that Defendants *themselves* verified the carbon-offset benefits yielded by the underlying forestry projects.

Even accepting their premises, Plaintiffs cannot show that a "significant portion" of reasonable consumers would "probab[ly]" have been misled by the challenged statements. *Moore*, 4 F.4th at 882 (citation omitted). Again, those statements—that Vuse had secured "[c]arbon neutral certification" and become the "first global, independently certified, carbon neutral vaping brand"— were true. 2021 ESG Report at 2 (partially quoted at Compl. ¶ 40); June 6, 2022 Press Release

1    (partially quoted at Compl. ¶ 40 n.31). Those statements do not become untrue—and capable of

2    misleading a critical mass of reasonable consumers—simply because Plaintiffs contest Verra's

3    assessment of some underlying projects. Their quarrel with *Verra's* methodology or standards for

4    verifying projects is not a basis for concluding that *Defendants* misrepresented anything.

5           In fact, Plaintiffs at no point even try alleging that a reasonable consumer would understand

6    statements like "Vuse has become the first global carbon neutral vape brand" to mean that

7    Defendants had *themselves* assessed the Verra-supported projects and validated those projects'

8    "true environmental impact." Compl. ¶ 39 (quoting May 2021 Press Release); *id.* ¶ 84. Although

9    they invoke "research show[ing] that consumers actively seek out environmentally sustainable

10   products" (*id.* ¶ 85), they offer no basis for concluding that consumers understand "carbon neutral"

11   statements to mean that the company has itself undertaken the complex scientific analysis to verify

12   that status. And Plaintiffs "cannot proceed simply by asserting [their] own belief and conclusions

13   about consumers' beliefs." *Dawson v. Better Booch, LLC*, 716 F. Supp. 3d 949, 957 (S.D. Cal.

14   2024) (citation omitted); *see also Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F. Supp. 3d 943,

15   955 (S.D. Tex. 2014) (in dismissing CLRA, UCL, and FAL claims, noting that plaintiffs "offer[ed]

16   no reason that the reasonable consumer would assume 365 Brands organic products are any more

17   organic than what organic certifying agencies require").

18          Plaintiffs thus seek to turn the reasonable consumer into one who adopts implausible

19   interpretations of straightforward claims. But the Ninth Circuit has repeatedly stressed that the

20   *reasonable*-consumer standard is not satisfied by allegations that a representation "might

21   conceivably be misunderstood by some few consumers viewing it in an *unreasonable* manner."

22   *Ebner*, 838 F.3d at 965 (emphasis added) (citation omitted); *see also, e.g.*, *Moore*, 4 F.4th at 882–

23   83 ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful

24   interpretations of labels or other advertising, dismissal on the pleadings may well be justified."

25   (citation omitted)).

26          Other courts have recognized the unreasonableness of the position that Plaintiffs advance

27   here, and have rejected efforts like this to hold companies liable for environmental claims based on

28   some third party's certification. Take the Northern District of Illinois's decision last year in *Sanchez*

1    *v. Walmart Inc.*, 733 F. Supp. 3d 653, 660–61 (N.D. Ill. 2024). There, the plaintiff claimed Walmart

2    misled consumers by labeling, as "sustainably sourced," seafood products that had been certified

3    as such by the Marine Stewardship Council. *Id.* at 661–62. Like Plaintiffs here, the *Sanchez* plaintiff

4    did not deny that the products had secured that certification, but claimed that "Walmart knew or

5    should have known that MSC-certified fisheries engage in unsustainable fishing practices." *Id.* at

6    663. The court, applying the reasonable-consumer standard, rejected that theory: "Plaintiff takes

7    issue with *MSC's* sustainability representation because it certifies fisheries that engage in

8    unsustainable practices, but *Walmart's* representation remains true—the product meets the

9    Council's standards." *Id.* at 668, 671 (emphases added). That "factually true" representation was

10   "not actionable as a deceptive or misleading statement by Walmart." *Id.* at 671.

11       The Southern District of New York reached the same conclusion in *Dwyer v. Allbirds, Inc.*,

12   598 F. Supp. 3d 137 (S.D.N.Y. 2022). The plaintiff there took issue with (among other things) the

13   defendant's use of a particular index to support its claim that it had fully offset its products' carbon

14   emissions. *Id.* at 145. But like the *Sanchez* court, the *Dwyer* court—again, applying the reasonable-

15   consumer test—recognized that "this is a criticism of the tool's methodology, not a description of

16   a false, deceptive, or misleading statement about the [p]roduct." *Id.* at 149. The plaintiff's "belie[f]

17   that Defendant should use a different method of measuring the Product's carbon footprint[] does

18   not plausibly suggest that what Defendant in fact says is materially misleading." *Id.* at 150 (citations

19   omitted). In other words, "[t]hat the relevant standards may be inadequate does not render

20   Defendant's representations as to compliance with those standards false or misleading." *Id.* at 151

21   (quoting *Lee v. Canada Goose US, Inc.*, No. 20-cv-9809, 2021 WL 2665955, at *6 (S.D.N.Y. June

22   29, 2021) (cleaned up)).

23       Same here. Plaintiffs' criticisms of *Verra's* methodology "do[] not plausibly suggest that

24   what *Defendant[s]* in fact say[] is materially misleading." *Id.* at 150 (emphasis added).

25                   **b.    The FTC's Green Guides, which are codified into California law,**
                     **provide a complete defense to companies that make**
26                   **environmental representations supported by a reasonable**
                     **basis—which is all that Plaintiffs allege here.**
27

28       For Plaintiffs' theory to work, they would need some basis for establishing that reasonable

1     consumers *would* understand representations about certification as "carbon neutral" as meaning the

2     company had itself verified that certification. But as a matter of law, they cannot make that showing.

3     FTC regulations that have been codified into California law specifically allow companies like

4     Reynolds to make environmental claims supported by a reasonable basis, and to rely on a third-

5     party expert's verified certification.

6         The FTC has promulgated Guides for the Use of Environmental Marketing Claims, also

7     known as the "Green Guides." 16 C.F.R. § 260 *et seq.* (2012). The Guides seek to "help marketers

8     avoid making environmental marketing claims that are unfair or deceptive." *Id.* § 260.1(a), (d).

9     They require marketers to " ensure that all reasonable interpretations of their claims are truthful,

10     not misleading, and supported by a reasonable basis." *Id.* § 260.2. A "reasonable basis often

11     requires competent and reliable scientific evidence," such as "tests, analyses, research, or studies

12     that have been conducted and evaluated in an objective manner by qualified persons and are

13     generally accepted in the profession to yield accurate and reliable results." *Id.*

14         The Green Guides specifically address marketers' reliance on a third party's certification as

15     the basis for an environmental claim. "Third-party certification does not eliminate a marketer's

16     obligation to ensure that it has substantiation for all claims reasonably communicated by the

17     certification." 16 C.F.R. § 260.6(c). In other words, a marketer *may* trust a third-party certification

18     that *is* substantiated.

19         "The Green Guides are more than persuasive authority in California; they have been

20     codified as law." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 784 (9th Cir. 2024).

21     Specifically, § 17580.5(b) of the Business and Professional Code establishes a defense where an

22     entity's "environmental marketing claims conform to the standards or are consistent with the

23     examples contained in the [Green Guides]." Thus, where a plaintiff's allegations show that

24     challenged representations "conform to" the Green Guides (*id.*), its claims fail. *See, e.g.*, *Dinan v.*

25     *SanDisk LLC*, 844 F. App'x 978, 979–80 (9th Cir. 2021) (affirming dismissal where plaintiffs

26     challenged defendant's use of a measurement that "is permitted by state and federal statutes").

27         That is exactly the situation here. Plaintiffs' allegations show that they are challenging

28     representations that the Green Guides—and thus California law—allow. They admit that the

challenged representations of Vuse as "carbon neutral" were based on purchases of carbon-offset credits certified by Verra, which subjects its supported projects to rigorous verification processes. *Supra* at 4–6; Compl. ¶¶ 47, 50, 59, 67, 75. Defendants' representation of Vuse as "carbon neutral" was thus grounded in "competent and reliable scientific evidence." 16 C.F.R. § 260.2. Those representations were also supported by "third-party certification." *Id.* § 260.6(c). Indeed, Defendants repeatedly highlighted Vertis's certification in the representations that Plaintiffs challenge. E.g., Compl. ¶ 7; *Sustainability FAQs* (screenshot at Compl. p. 16). And that is in addition to the certification that, as Plaintiffs acknowledge, Verra provided regarding the projects in which Defendants invested. Compl. ¶¶ 50, 59, 67, 75. The description of Vuse as "carbon neutral" is thus precisely the sort of representation that the Green Guides and California law protect: one that is grounded in evidence and verified by experts on the complex issue of carbon offsets.

In arguing to the contrary, Plaintiffs seek to turn the Green Guides inside-out. ***First,*** they ask the Court to disregard the "reasonable basis" that Defendants had for calling Vuse "carbon neutral," and to instead credit their subjective view that some of the projects supporting that certification "fail to provide genuine, additional carbon reductions." Compl. ¶ 4. But those allegations are based on little more than Plaintiffs' assertions as to what they say their own "satellite and geospatial analysis" shows—supposedly, that eucalyptus plantations in Uruguay are "financially viable … independent of carbon offset funding," and that the relevant areas of China and Inner Mongolia face a "low risk" of deforestation. *Id.* ¶¶ 54, 62–63, 70–71, 78. This second-guessing cannot nullify Verra's processes for certifying the relevant projects.

The November 2024 media coverage that Plaintiffs cite does not overcome these deficiencies. Compl. ¶¶ 2, 45 (citing Tobacco Giant Article); *id.* ¶ 56–57 (citing Harvard Article). In reporting that other entities questioned the emissions avoided or removed by just one of the projects (the Guanaré project), the articles merely showed that this was a matter of scientific debate within the environmental community. They note that another ratings agency (a competitor of Verra's) did not entirely rule out that the Guanaré project would yield the benefits that Verra had verified, and instead gave that outcome only a "'low' likelihood." Harvard Article; Tobacco Giant Article. And they show that some criticisms were grounded not in an assessment of the carbon

emissions that the Guanaré project would avoid or remove, but in an environmental-policy view of such projects more generally. *See* Harvard Article (noting a criticism of the project on the grounds that "[i]ndustrial tree plantations in Uruguay … replace an extremely important ecosystem—grasslands—to plant tree monocultures, destroying biodiversity and watersheds"). Plaintiffs are entitled to share the views of these organizations as to the utility of tree-plantation projects like the one in Guanaré, and as to the carbon benefits yielded by that project. But they cannot weaponize this scientific debate to render the challenged representations deceptive.

This is especially true given the timing of those representations. Plaintiffs do not claim that any questions were raised as to any of the at-issue projects until November 2024. Compl. ¶ 56. And they do not identify a *single* instance, from that point on, in which any Defendant represented that Vuse was carbon neutral. Again, Plaintiffs say BAT stated that it had by then ceased making "carbon neutral" representations regarding Vuse, and do not identify any such statements after November 2024. *Id.* ¶ 45. And the only representations that they claim were still on the Vuse website at that point specifically explained that this description was based on Vertis's independent certification. *Id.*; *see also id.* at pp. 16–17. Plaintiffs are thus attempting to hold Defendants liable for not foreseeing that someone might, at some future point, question some of the Verra-supported projects. But Plaintiffs' down-the-road reading of satellite imagery cannot reach back in time to undo the "reasonable basis" that Defendants had for calling Vuse "carbon neutral." 16 C.F.R. § 260.2. The relevant "question [is] whether [the claimant] had a reasonable basis to make such … claims *at the time they were made*." *FTC v. Johnson*, 96 F. Supp. 3d 1110, 1150 (D. Nev. 2015) (emphasis added). And Plaintiffs' allegations show that BAT, RJRV, and RJRT *did* have a reasonable basis at the relevant time, given Verra's and Vertis's certification of the key facts.

**Second,** Plaintiffs assert that Defendants "should have *independently* verified" that the projects provided the claimed carbon offsets. Compl. ¶ 83 (emphasis added). In other words, they say that it was not enough that Defendants had the support of *two* outside entities with subject-matter expertise in carbon offsets, and that Defendants—who have no expertise in this field—needed to undertake *their own* "substantiation for all claims reasonably communicated." *Id.*

That argument fails under California law. "It is well settled that private litigants may not

1    bring claims on the basis of a lack of substantiation." *Aloudi v. Intramedic Research Group, LLC*,

2    No. 15-cv-882, 2015 WL 4148381, at *3 (N.D. Cal. July 9, 2015). California law authorizes

3    "[p]rosecuting authorities, but *not* private plaintiffs," to take action against advertisers for failing

4    to "substantiate advertising claims." *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm.,*

5    *Inc.*, 133 Cal.Rptr.2d 207, 212 (Cal. Ct. App. 2003) (discussing Cal. Bus. & Prof. Code § 17508)

6    (emphasis added). As the Ninth Circuit has explained, this rule—which "is firmly established law

7    in California"—"preclude[s] private citizens from bringing actions that allege that the challenged

8    advertising language lacked proper scientific substantiation." *Kwan v. SanMedica Int'l*, 854 F.3d

9    1088, 1095-96 (9th Cir. 2017). So Plaintiffs cannot use a non-substantiation theory to sidestep the

10    Green Guides.[9]

11        Against all of this, Plaintiffs assert in passing that Defendants violated two provisions of

12    the Green Guides, sections 260.4 and 260.5. Compl. ¶¶ 37–38, 122. They are wrong on both counts.

13    Section 260.4(b) prohibits "[u]nqualified general environmental benefit claims," which "are

14    difficult to interpret and likely convey a wide range of meanings." But Plaintiffs admit that "carbon

15    neutral" is *easy* to interpret and has a *straightforward* meaning: "[T]he production and use of a

16    product results in no net addition of CO2 to the atmosphere." Compl. ¶ 30; *see also id.* ¶ 139. They

17    do not offer any other interpretation of the phrase, do not allege that there is disagreement regarding

18    what "carbon neutral" means, and do not claim to have been confused by the term. This stands in

19    stark contrast to § 260.4's examples of unqualified claims: generic terms like "eco-friendly" or

20    "greener," which convey "far-reaching environmental benefits" that cannot be "substantiate[d]."

21        Plaintiffs fare no better with § 260.5. Compl. ¶ 122. They rely on a subsection requiring

22    "sellers" of carbon-offset credits to "employ competent and reliable scientific and accounting

23    methods to properly quantify claimed emission reductions." 16 C.F.R. § 260.5(a). But *Defendants*

24

---

25    [9]    Plaintiffs' argument also (again) turns the Green Guides on their head. Requiring a marketer to
        *itself* substantiate an environmental claim that relies on an independent expert's robust vetting

26    procedures would negate the entire idea of invoking a third party's certification—but § 260.6(c)
        expressly *allows* such reliance. Plaintiffs' rule would discourage any company from investing

27    in carbon-offset credits, knowing it could not disclose such efforts unless it invested tremendous
        time and resources in becoming an expert in the "technical complexit[ies] of carbon

28    accounting." Compl. ¶ 35. Unsurprisingly, neither the FTC nor any court has endorsed that rule.

do not sell credits. And Verra—which also is not a "seller" subject to § 260.5—*does* use "competent and reliable scientific and accounting methods" to verify the projects it supports. *Supra* at 4–5.[10] Plaintiffs allege no facts whatsoever about the actual sellers of the credits.

Because Plaintiffs' allegations show that the challenged statements "conform to the standards … contained in" the Green Guides (Bus. & Prof. Code § 17580.5(b)), those statements are not actionable. At the very least, Defendants' compliance with the Green Guides fatally undercuts Plaintiffs' attempt to show that the challenged representations were false or misleading.

### 3.    Plaintiffs' passing mentions of a fraudulent-omission theory fail.

Plaintiffs also throw in fleeting references to supposed fraudulent "omissions." Compl. ¶¶ 113–14, 121. But they never say what they think Defendants omitted. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. To the extent that Plaintiffs mean to suggest that Defendants failed to disclose that the at-issue projects did not yield the benefits that Verra found, that theory would fail. *First,* Plaintiffs' second-guessing of Verra's determinations does not establish that those determinations were actually inaccurate. At most, Plaintiffs advance a different opinion on a complex scientific question. That difference of opinion does not amount to Defendants' omission of a "material fact." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (citation omitted). *Second,* even indulging Plaintiffs' armchair criticisms, Plaintiffs never claim that Defendants knew of those issues—and do not allege a single instance in which any Defendant characterized Vuse as "carbon neutral" *after* questions were raised as to any of the projects. *Supra* at 8–9; *see also, e.g.*, *Cortez v. Handi-Craft Co., Inc.*, No. 4:24-cv-3782, 2025 WL 1452561, at *4 (N.D. Cal. Apr. 29, 2025) ("To assert fraudulent omission under the UCL, FAL, and CLRA, a plaintiff must show that the defendant had … actual knowledge of the defect or falsity at issue."). *Third,* Plaintiffs do not allege facts to establish that Defendants had a duty to disclose any such facts. *See, e.g.*, *Hodsdon*, 891 F.3d at 861 ("[T]o be actionable the omission must be … of a fact the defendant was obliged

---

[10]  Plaintiffs also mention § 260.5(c)'s statement that it is deceptive to claim that a carbon offset represents an emission reduction if the relevant activity is "required by law." Compl. ¶ 37; 16 C.F.R. § 260.5(c). But they do not allege that any of the at-issue projects were required by law.

to disclose." (cleaned up)). Indeed, they do not even claim that any Defendant had such a duty.

\* \* \* \* \*

Plaintiffs do not—and cannot—plausibly allege that a "significant portion" of reasonable consumers would "probab[ly]" be misled by the representations that the Vuse brand was "carbon neutral." *Moore*, 4 F.4th at 882. Their theory of deception fails as a matter of law.

### B. Plaintiffs fail Rule 9(b)'s heightened pleading requirement, because they do not allege fundamental aspects of their fraud-based claims.

Even if Plaintiffs could somehow clear the reasonable-consumer bar, they would fail once that bar is raised to the 9(b) height. Again, all of their claims are grounded in allegations of fraud, so they must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964 (cleaned up; citation omitted).

Plaintiffs have not done this—not even close. They claim that each of the three named Plaintiffs "viewed at least one of the representations above"—but without specifying *which* representation(s) any particular Plaintiff saw. Compl. ¶ 46; *see also, e.g.*, *Ahern v. Apple*, 411 F. Supp. 3d 541, 564 (N.D. Cal. 2019) (dismissing claims under Rule 9(b) because "Plaintiffs have not specified which statements any of them saw or relied on in deciding to buy the Apple computers"); *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834, 2018 WL 288085, at \*9 (N.D. Cal. Jan. 4, 2018) (same). They allege that each Plaintiff "believe[d] that the Products were, in truth, carbon neutral"—but without claiming that any Plaintiff understood Defendants to mean that they had *themselves* verified the underlying projects. *Id.* They baldly assert that each Plaintiff "relied on the Defendants' representations … when making their purchasing decisions"— but without alleging how any supposed belief that Defendants had independently verified the carbon-offset credits affected any particular Plaintiff's choice to buy Vuse products *id*. And they baldly assert that consumers paid a "price premium" for these products—but without alleging any facts supporting that assertion. Compl. ¶ 88–89; *see also, e.g.*, *Babaian v. Dunkin' Brands Group, Inc.*, No. 17-cv-4890, 2018 WL 11445614, at \*8 (C.D. Cal. Feb. 16, 2018) ("[T]he Court cannot allow Plaintiff to proceed on a barebones assertion of a price premium without some factual basis

for that assertion."); *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) (similar). This "formulaic recitation" is not enough to satisfy even the baseline Rule 8 standard, let alone the heightened Rule 9(b) standard. *Twombly*, 550 U.S. at 555–56.

## II.   Plaintiffs' UCL and common-law claims fail for additional reasons. (Counts 2, 4–6)

For the above reasons, Plaintiffs have failed to adequately allege a theory of deception, and so all of their claims fail. Their UCL and common-law claims also fail for other reasons.

### A.    Plaintiffs fail to state a claim under any prong of the UCL. (Count 2)

The UCL proscribes "unlawful, unfair, or fraudulent business act or practice[s]." Cal. Bus. & Prof. Code § 17200. Each prong captures a separate theory of liability. *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020). Plaintiffs do not plausibly allege a claim under any prong.

**Not unlawful.** The "unlawful" prong "borrows violations of other laws." *Id.* (cleaned up; citation omitted); *see also* Compl. ¶ 122 (claiming that Defendants' conduct was "unlawful because it violates the CLRA and [FTC] regulations"). So Plaintiffs' failure to plausibly allege that Defendants violated those laws means they have no claim under the "unlawful" prong. *Supra* § I.

**Not fraudulent.** The "fraudulent" prong requires showing that "members of the public are likely [to be] deceived." *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1208 (N.D. Cal. 2020) (cleaned up; citation omitted). Again, Plaintiffs have not plausibly made that allegation. *Supra* § I.

**Not unfair.** The failure of Plaintiffs' claims under the other prongs means they do not have a claim that the same conduct violates the "unfair" prong. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (claim under the unfair prong "cannot survive if the claims under the other two prongs of the UCL do not survive"). In any event, their three-sentence attempt at alleging unfair conduct (Compl. ¶ 123)—which relies entirely on a "threadbare recital[]" of legal principles (*Iqbal*, 556 U.S. at 678)—fails. They claim that Defendants' conduct "offends established public policy" (Compl. ¶ 123), but identify no such policy. They contend that the supposed "harm by Defendants' conduct outweighs any possible utility" (*id.*), but do not plausibly allege any such harm. *Supra* § I. And they assert that Defendants' conduct violated "the CLRA and FTC regulations" (Compl. ¶ 123), but do not plausibly allege any such violation. *Supra* § I.

**B.    Plaintiffs fail to state a claim for breach of an express or implied warranty. (Counts 4–5)**

Plaintiffs' claims for breach of an express or implied warranty also fail.

**Express Warranty.** The elements of breach of an express warranty are "that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1031 (N.D. Cal. 2016) (citation omitted). A plaintiff must "identify a specific and unequivocal written statement about the product that constitutes an explicit guarantee." *Valentine v. Crocs, Inc.*, 783 F. Supp. 3d 1204, 1211 (N.D. Cal. May 19, 2025) (Thompson, J.) (cleaned up; citation omitted).

Plaintiffs' cursory claim, spanning just five sentences (Compl. ¶¶ 138–42), fails these requirements. *First,* Plaintiffs do not allege that the representations regarding Vuse's carbon neutrality were an "explicit guarantee" that Reynolds had "independently verified that the projects they invest in" provided the claimed carbon benefits. *Strumlauf*, 192 F. Supp. 3d at 1031 (citation omitted); Compl. ¶ 83. *See, e.g.*, *McMahon v. Take-Two Interactive Software, Inc.*, 745 F. App'x 786, 787 (9th Cir. 2018) (holding that "the statement 'Featuring GTA [a video game] Online' did not specifically and unequivocally promise, or provide an explicit guarantee of, immediate access to GTA Online"); *Valentine*, 783 F. Supp. 3d at 1212 (holding that "visual images of [] Crocs shoes set in certain surroundings[] made no explicit guarantees" that "Crocs shoes would not shrink"). *Second,* even if Plaintiffs had plausibly alleged that the "carbon neutral" representations constituted a warranty, they cannot show that Defendants breached that warranty or caused them any injury. Again, the "carbon neutral" representations were *true*. *Supra* § I.

**Implied Warranty.** There are two forms of implied warranty: an "implied warranty of fitness for a particular purpose," and "the implied warranty of merchantability." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l. Inc.*, 83 F. Supp. 3d 855, 876–78 (N.D. Cal. 2015). Plaintiffs never clarify which version they are invoking (Compl. ¶¶ 143–51), but it does not matter: They do not plausibly allege a breach of either version. A claim for breach of an implied warranty of fitness

1   for a particular purpose would require Plaintiffs to "identify [the] particular purpose for which

2   [they] obtained" the Vuse products—one that "is peculiar to the nature of [their] business." *T & M*,

3   83 F. Supp. 3d at 877 (citations omitted). But they allege nothing of the sort. And a claim for breach

4   of the implied warranty of merchantability would require Plaintiffs to allege "that the product 'did

5   not possess even the most basic degree of fitness for ordinary use.'" *Id.* at 878 (citation omitted).

6   But they do not try making that lofty claim, either. And they cannot do so, as their allegations about

7   Vuse's carbon emissions have nothing to do with the Vuse products themselves or their fitness for

8   their ordinary purpose. This claim also fails because an implied warranty requires vertical privity

9   between Plaintiffs and Defendants. *Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*, 691 F. Supp.

10  3d 1113, 1124 (N.D. Cal. 2023). But Plaintiffs allege that they bought Vuse products from

11  unidentified "stores"—not from Defendants. Compl. ¶¶ 11–13.

12          **C.      Plaintiffs fail to state a claim for unjust enrichment or quasi-contract. (Count 6)**

13          Plaintiffs' final cause of action, for "unjust enrichment / quasi-contract," also fails. Compl

14  ¶¶ 152–58 (cleaned up). There is no "standalone cause of action for unjust enrichment in

15  California." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (cleaned up).

16  And although California courts sometimes let plaintiffs assert a similar theory "as a quasi-contract

17  claim seeking restitution" (*id.* (citation omitted)), Plaintiffs have not plausibly alleged such a claim.

18  ***First,*** doing so would require them to allege that they lack an adequate remedy at law. *Phillips v.*

19  *Brooklyn Bedding LLC*, No. 23-cv-03781, 2024 WL 2830663, at *1 (N.D. Cal. Mar. 28, 2024). But

20  they do not make that claim. ***Second,*** "an unjust enrichment claim does not lie where the parties

21  have an enforceable express contract." *Durell v. Sharp Healthcare*, 108 Cal.Rptr.3d 682, 699 (Cal.

22  Ct. App. 2010). So the fact that Plaintiffs simultaneously assert a claim for breach of express

23  warranty—which "requires privity of contract" (*In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp.

24  3d 888, 941 (N.D. Cal. 2018))—dooms their quasi-contract claim. ***Finally,*** a quasi-contract claim

25  requires Defendants to have been "*unjustly* enriched at the expense of another." *Durell*, 108

26  Cal.Rptr.3d at 699 (cleaned up; emphasis added). But Plaintiffs cannot plausibly make that

27  allegation either, because the challenged representations were true. *Supra* § I.

28

1

## CONCLUSION

2        Reynolds respectfully requests that the Court dismiss the Complaint in its entirety.

3

4    Dated: September 16, 2025                JONES DAY

5

6                                           */s/ Darren K. Cottriel*
                                            Darren K. Cottriel
7                                           Patrick Haney
                                            Tyler Fields
8
                                            *Attorneys for Defendants*
9                                           *R.J. Reynolds Vapor Company,*
                                            *R.J. Reynolds Tobacco Company, and*
10                                          *Reynolds American Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28