UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA BELL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>R.J. REYNOLDS VAPOR COMPANY, et al.,<br><br>Defendants. | Case No. 25-cv-04521-TLT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART: BRITISH AMERICAN TOBACCO, P.L.C.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; R.J. REYNOLDS'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**<br><br>Re: Dkt. Nos. 58, 62, 63, 66 |

## I.    INTRODUCTION

Before the Court is the Defendants' motion to dismiss. ECF 58, 62.  In this case, Plaintiffs assert six causes of action alleging violations of California's Consumer Legal Remedies Act, California's Unfair Competition Law, California's False Advertising Law, breach of express and implied warranties, and unjust enrichment.  These claims are predicated on the allegation that Defendants misrepresented the environmental impact of their products to the public.  Defendants ask the Court to dismiss Plaintiffs' claims by raising (1) a jurisdictional challenge and (2) a failure to state a claim.

After reviewing the parties' briefs, hearings, the relevant legal authority, and for the reasons stated below, the Court concludes that Plaintiffs have standing, but failed to plausibly state claims under the UCL, CLRA, FAL, and the express warranty claim.  Moreover, because Plaintiffs failed to submit an opposition to their claims for implied warranty and unjust enrichment, those claims are deemed abandoned.  Plaintiffs also failed to demonstrate personal jurisdiction over Defendant British American Tobacco, p.l.c., and the limited jurisdictional

United States District Court<br>Northern District of California

discovery is unlikely to withstand the jurisdictional challenges.

Accordingly, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion to dismiss.

## II.    PROCEDURAL HISTORY

On May 28, 2025, Plaintiffs Vanessa Bell, Sean Nugent, and Destiney Murrah filed a complaint against Defendants R.J. Reynolds Vapor Company ("RJRV"), R.J. Reynolds Tobacco Company ("RJRT") (collectively "Reynolds"), Reynolds America, Inc. ("RAI"), and British American Tobacco p.l.c. ("BAT") in the U.S. District Court for the Northern District of California, *Bell et al. v. R.J. Reynolds Vapor Company et al.*, No. 25-cv-03222-TLT.  ECF 1.  On September 16, 2025, Defendants filed several motions to dismiss, which subsequently became moot.  ECF 48, 52, 53.

Specifically, on September 30, 2025, Plaintiffs filed a First Amended Complaint ("FAC"). ECF 55.  On October 21, 2025, Defendants filed renewed motions to dismiss the FAC: BAT moved to dismiss for lack of jurisdiction (ECF 58); RAI moved to dismiss for lack of jurisdiction (ECF 59); and Reynolds moved to dismiss for lack of subject matter jurisdiction and failure to state a claim (ECF 62) and separately filed a request for judicial notice to support its motion (ECF 63).  BAT and Reynolds's motions were fully briefed on December 5, 2025.  ECF 66, 67, 70, 72.

On December 5, 2025, the Court noted that Plaintiffs did not oppose RAI's motion to dismiss for lack of personal jurisdiction and invited a request for dismissal.  ECF 73.  On January 20, 2026, Plaintiffs filed a Notice of Voluntary Dismissal of claims against RAI without prejudice (ECF 78), which the Court granted the same day.  ECF 79.

This Order relates to the remaining motions to dismiss posed by Reynolds and BAT.  ECF 58, 62, 63.

## III.    FACTS ALLEGED IN THE FAC

The core of this dispute involves Plaintiff's legal challenge to Defendants' marketing campaign for vaping products.  Plaintiffs are three California citizens and consumers who purchased 'Vuse' brand vaping products through Defendants.  FAC ¶¶ 11–13.  Defendants Reynolds operate subsidiaries of RAI and manufacture the 'Vuse' brand vaping products.  *Id*. ¶¶

United States District Court
Northern District of California

14–15.  Defendant BAT is a United Kingdom corporation, owns RAI, and is the indirect parent of RAI's operating subsidiaries, including Reynolds.  *Id*. ¶ 17.

Beginning in early 2021, Defendants launched an advertising campaign for carbon neutrality, labeling Vuse as the 'first carbon neutral vape brand.'  *Id*. ¶¶ 41–44.  This carbon neutrality campaign was predicated on the purchase of carbon-offset credits created from projects that aimed to reduce their carbon emissions.  *Id*.  Defendants purchase the credits through certification by third-party organizations such as Verra and Vertis.  *Id*. ¶ 50.  According to Verra's public registries, Defendants allocated 84.72% of their Vuse-related carbon credit investments to four key reforestation and forest protection projects between 2021 and 2024.  *Id*.  ¶¶ 51–84.  Plaintiffs challenge the validity of these offsets, alleging that these projects "do not provide genuine, additional carbon reductions" because "forestry activities that would have occurred anyway" or lands were "already at minimal risk of deforestation."  *Id*. ¶52.  Plaintiffs performed an independent analysis by conducting consumer surveys and reviewing publicly available data, news reports, project documentation, satellite imagery, and third-party evaluations.  *Id*. ¶¶ 53–84.

Plaintiffs allege that Defendants do not justify their "carbon neutral" claims and mislead consumers.  *Id*. ¶ 52.  Defendants "should have independently verified that the projects they invest in meet the fundamental requirement of" carbon neutrality rather than relying on third parties' certification on carbon neutrality.  *Id*. ¶ 85–86.  Further, "Defendants' misrepresentations are material to consumers and drive consumers' purchasing decisions" and "Defendants' deceptive marketing practices also distort the marketplace and impair consumer choice."  *Id*. ¶¶ 88–89.  Plaintiffs allege that they paid a "price premium" to Vuse products because they believed the "carbon neutral" label signified that the products result in no net addition of carbon to the atmosphere.  *Id*. ¶¶ 90–92.

**IV.    REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE**

Reynolds requested judicial notice of 17 exhibits, or, in the alternative, incorporation by reference of selected exhibits, in support of their present motion.  ECF 63.  Reynolds contend that the exhibits are publicly available materials and that Plaintiffs incorporated them by reference into their FAC.  *Id*. at 2–5.  Plaintiffs have not filed an opposition to Reynolds' request.

"The [C]ourt may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *Id*. However, "the mere mention of the existence of a document is insufficient to incorporate the contents" of a document. *Id*.

The Court may consider materials in the pleadings and also "consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011). However, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Cox v. WSP USA Inc. Grp. Ins. Plan*, No. 24-CV-08812-HSG, 2026 WL 121206, at *3 (N.D. Cal. Jan. 16, 2026) (citing *Khoja*, 899 F.3d at 1002).

### A.    Exhibit A to D–three press releases from BAT and one investor report

Reynolds request that the Court take judicial notice of, or treat as incorporated by reference, three publicly available press releases and one investor report from BAT.  Two of the press releases and the report were referenced in the FAC.  ECF 63, Exhibits A–C.  The third press release is functionally related to the aforementioned releases.  *Id*., Exhibit D.  Three press releases announce Vuse's status as the world's first carbon-neutral vape brand and detail BAT's proposed projects to reduce carbon emissions.  The investor report is a 129-page document addressing BAT's environmental, social, and governance initiatives, including matters beyond the alleged claims related to Vuse products.  *Id.*, Exhibit A.

To the extent that the press releases form the basis for the Plaintiff's claims,  as incorporated by reference in the FAC, the Court takes judicial notice of the three press releases and the report only to the extent of acknowledging their existence in the public domain, the fact

United States District Court
Northern District of California

that such statements were made, but not for the truth of their statements. *See Sanchez-Martinez v. Freitas*, No. 23-CV-02508-HSG, 2024 WL 4309277, at *3 (N.D. Cal. Sept. 26, 2024) ("The Court takes judicial notice of the press release and the article for the limited purposes of acknowledging the existence of these documents. But the Court does not take judicial notice of the truth of the contents of these documents."); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111-12 (N.D. Cal. 2009) (taking judicial notice of press releases, news articles, and analyst reports referred to in the complaint, but not for the truth of their content).

Accordingly, the Court **GRANTS-IN-PART AND DENIES-IN-PART** Reynold's request as to Exhibits A through D.

### B.    Exhibit E to N–webpages from the third party organizations

Reynolds request that the Court take judicial notice of, or treat as incorporated by reference, ten webpages from the third party organizations that provided Defendants with certification for the carbon-offset credits. These webpages describe their procedures for certifying carbon-offset projects, including those specified in the FAC, and explain the background and purpose of the projects and organizations.

The Court recognizes these webpages as public domain sources whose descriptions formed the basis of Plaintiffs' claims. However, because the FAC challenges the accuracy of the certifications and methodologies underlying the descriptions, the Court is not in a position at this pleading stage to determine the accuracy of the statements on the webpages. Therefore, the Court takes judicial notice of these webpages only to the extent of acknowledging their existence in the public domain, and the fact that such statements were made, not the truth of their content. *See Hoffman v. Life Ins. Co. of the Sw.*, 740 F. Supp. 3d 918, 925 (N.D. Cal. 2024) (taking limited judicial notice to the webpages as they appeared, not to their accuracy).

Accordingly, the Court **GRANTS-IN-PART AND DENIES-IN-PART** Reynold's request as to Exhibits E through N.

### C.    Exhibit O to Q–three news articles from third party media organizations

Reynolds request that the Court take judicial notice of, or treat as incorporated by reference, three publicly available news articles published by third party media.  While Plaintiffs rely on these articles to support their claims and no party questions the authenticity of the articles, the Court is not in the position to determine the veracity of the conclusions in the articles. Therefore, the Court takes judicial notice of these articles only to the extent of acknowledging their existence in the public domain, not the truth of their content.  *See Chan v. ArcSoft, Inc.*, No. 19-CV-05836-JSW, 2020 WL 13891272, at *3 (N.D. Cal. Sept. 16, 2020) ("[T]o the extent the Court can take judicial notice of news articles, it can do so only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.");  *2Die4Kourt v. Hillair Cap. Mgmt.*, LLC, No. 16-cv-1304-JVS-DFM, 2016 WL 4487895, at *1 n.1 (C.D. Cal. Aug. 23, 2016) (taking judicial notice of online news articles "solely for their existence and content, and not for the truth of any statements in the documents.").

Accordingly, the Court **GRANTS-IN-PART AND DENIES-IN-PART** Reynold's request as to Exhibits O through Q.

## V.    LEGAL STANDARD

### A.    RULE 12(B)(6) MOTION TO DISMISS

Pursuant to Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To overcome a motion to dismiss, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Generally, when assessing the sufficiency of a complaint under Rule 12(b)(6), the Court may not consider materials outside of the pleadings.  *Khoja v. Orexigen*

*Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

**B.    STANDING**

Article III of the Constitution gives federal courts the power to decide only "Cases" and "Controversies." U.S. Const. art. III, § 2. Courts have "long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties." *Carney v. Adams*, 592 U.S. 53 (2020). To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Association of Irritated Residents v. EPA*, 10 F.4th 937, 943 (9th Cir. 2021) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *see California v. Texas*, 593 U.S. 659 (2021)). The plaintiff has the burden of establishing standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Specifically, "at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element" of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). (quoting *Warth v. Selden*, 422 U.S. 490, 518 (1975)).

**C.    RULE 12(b)(2) PERSONAL JURISDICTION**

Under Rule 12(b)(2), a court must dismiss an action where it does not have personal jurisdiction over a defendant. Fed. R. Civ. Pro. 12(b)(2). "[T]he plaintiff bears the burden of establishing that jurisdiction is proper." *Mavrix Photo v. Brand Techs.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor." *Freestream Aircraft Ltd. v. Aero L. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018).

However, when evaluating a motion to dismiss for lack of personal jurisdiction, a court may consider material outside of the pleadings, including evidence in affidavits and other written materials. *Data Disc v. Sys. Tech. Ass'n*, 557 F.2d 1280, 1285 (9th Cir. 2001). If factual allegations are controverted by affidavit, a plaintiff may not rest on the bare allegations in the complaint. *Yamashita v. LG Chem. Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023).

United States District Court
Northern District of California

Jurisdiction may be imputed from a local subsidiary to an out-of-state affiliate if a plaintiff satisfies the "alter ego" test. *See Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir.2011) (recognizing "agency" test and the "alter ego" test); *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014) (invalidating the "agency" test). Under the alter ego test, general jurisdiction may be imputed where companies are "not really separate entities," such that one entity's contacts with the forum state can be fairly attributed to the other." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015).

## VI.    ANALYSIS

### A.    Plaintiffs have established Article III standing

Reynolds argue that Plaintiffs lack standing because Plaintiffs cannot plead a concrete and particularized injury caused by Defendants' "carbon neutral" representation. ECF 62 at 10–11. Plaintiffs counter that their injury was concrete "in the form of a pocketbook injury" by paying more for a product in reliance on Defendants' misrepresentation of carbon neutrality. ECF 67 at 7–8, 20.

The Ninth Circuit in *Bowen v. Energizer Holdings, Inc.* held that plaintiffs establish standing by alleging that they "paid more for a product than they otherwise would have paid" due to a misrepresentation. 118 F.4th 1134, 1145 (9th Cir. 2024). "To properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she 'would not have purchased the goods in question absent this misrepresentation." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018).

Here, the Court must accept factual allegations as true at this stage, and therefore, the merits of whether Defendants' claims of being carbon neutral are true are not yet at issue to determine the standing issue. *See In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 555 F. Supp. 3d 829, 864 (N.D. Cal. 2021); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Plaintiffs have alleged that they bought the products at the time of Defendants' carbon neutral campaign at a premium price and would not have purchased the products had they known the claim was deceptive. Plaintiffs' economic harm can be redressed either by awarding

8

damages to Plaintiffs or issuing an injunction to Defendants.

Accordingly, the Court finds that Plaintiffs have met their burden to establish standing.

**B.      Plaintiffs failed to plausibly state claims under the UCL, CLRA, and FAL.**

Reynolds moves to dismiss Plaintiffs' consumer protection claims on the basis that Defendants' carbon neutral claims cannot be false or deceptive as a matter of law because they are based on independent third-party certifications and comply with Federal Trade Commission ("FTC") regulations (i.e., 16 C.F.R. § 260 *et seq.*) incorporated into California law.  ECF 62 at 14–21.  Plaintiffs counter that such certifications do not excuse false claims when the underlying projects fail to produce legitimate credits and, without independent verification of carbon neutrality, Defendants' conduct was unlawful, fraudulent, and unfair, such that a reasonable consumer would be misled by Defendants' representations.  ECF 67 at 8–13.  Additionally, invoking 16 C.F.R. § 260.2, Plaintiffs argue that Defendants failed to ensure "all reasonable interpretations" of environmental claims are "truthful, not misleading, and supported by a reasonable basis" before making such claims.  *Id*. at 14–18.

To survive dismissal from group claims under UCL, CLRA, and FAL, each claim must pass both the "reasonable consumer" test and the heightened pleading standard of Rule 9(b).  *Bodenburg v. Apple Inc.*, 146 F.4th 761, 768 (9th Cir. 2025).  Under the reasonable consumer standard, plaintiffs must show "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted).  While dismissals at the pleading stage are "rare," *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024), plaintiffs "cannot proceed simply by asserting [their] own belief and conclusions about consumers' beliefs without additional facts."  *Harris v. McDonald's Corp.*, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021) (citing *Twombly*, 550 U.S. at 570).

Here, the central dispute partly arises from the interpretation of the term "carbon neutrality" in the consumer market.  There is no standalone, statutory definition of the term.  The FAC alleges that "carbon neutral means that the production and use of a product results in no net addition of carbon dioxide to the atmosphere [that is] typically achieved by either eliminating

carbon emissions entirely from a product's production and use, or by balancing or offsetting carbon emissions from manufacture and use with an equivalent amount of carbon removal through "verified offset projects."" ECF 55 ¶ 32. Merriam-Webster provides a dual definition for the term as (1) having or resulting in no net addition of carbon dioxide to the atmosphere; or (2) counterbalancing the emission of carbon dioxide with carbon-offsets. Reynolds contends that it "means a combination of emission reduction and offsets through verified credits [rather than] a total absence of emission." ECF 93 at 2.

Plaintiffs have failed to plausibly allege that a reasonable consumer would adopt Plaintiff's specific interpretation of the carbon neutral label. Plaintiffs' belief that carbon neutrality must mean no additional carbon emissions to the atmosphere and that Defendants must have conducted an independent, primary-source verification of the carbon-offset project amounts to an "unreasonable or fanciful interpretation" of the carbon neutral label in Defendants' campaign that does not meet the probability of deception required at the pleading stage. Consistent with the dual-path definition in the FAC and its plain meaning, Defendants achieved carbon neutrality by counterbalancing carbon dioxide emissions through verified carbon-offset projects.

Plaintiffs also have failed to plausibly allege that Defendants lacked a "reasonable basis" for their environmental claims under the FTC regulation. Under 16 C.F.R. § 260.2, a reasonable basis "requires competent and reliable scientific evidence … evaluated in an objective manner by *qualified persons*." Defendants truthfully disclosed their reliance on the third-party verification. ECF 62 at 16–21. The third parties are allegedly independent organizations that have operated for decades and manage leading standards in the global carbon market. ECF 62 at 1–2,4 ; ECF 83 at 4–5. They describe how much carbon-offset credits Vuse products contribute through their forestry projects. ECF 55 ¶ 51. Conversely, Plaintiffs rely on their own independent investigations to claim that the third parties' underlying projects fail to produce legitimate carbon-offset credits. ECF 67 at 13–14. Such a challenge to scientific efficacy is insufficient to allege a materially deceptive statement. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012) (finding that disagreements over "statistical methodology and study design" are generally insufficient to allege a materially false statement); *Dwyer v. Allbirds*, Inc., 598 F. Supp.

3d 137, 150 (S.D.N.Y. 2022) (plaintiff's belief that defendant should use a different method of measuring the carbon footprint does not plausibly allege a materially misleading claim).  Given that Defendants relied on the evidence evaluated by qualified third parties, Plaintiffs have not plausibly alleged a violation of the plain language of the FTC regulation.

Moreover, the FAC fails to provide a sufficient factual basis to bridge the gap between a technical disagreement over carbon-offset projects and a plausible claim of consumer deception. Plaintiffs claim that to a reasonable consumer, "it implies an objective, verifiable outcome of net-zero achieved through genuine reductions and offsets that actually represent additional, real-world reductions or removals." ECF 55 ¶¶ 33–35; ECF 84 at 2. While the FAC presented consumer surveys and studies showing that a significant portion of consumers prefer carbon-neutral products, Plaintiffs fail to plausibly allege how these consumers would reject third-party certifications and instead adopt Plaintiffs' own findings. Without more, Plaintiffs' subjective interpretation of what consumers *should* believe is insufficient to state a claim for widespread consumer deception.

The Ninth Circuit's precedent is instructive. In *Moore v. Trader Joe's Co.*, the Ninth Circuit held that a reasonable consumer would not interpret the term "100% New Zealand Manuka Honey" to mean that the honey is exclusively derived from a single floral source of Manuka, because it is impossible to have complete control over the bees' pollination process. 4 F.4th 874, 882 (9th Cir. 2021). Here, Plaintiffs conceded that a reasonable consumer would not perceive carbon neutral to mean "a total absence of carbon emissions at every stage." ECF 84 at 2. Given the complexity of carbon emission and the fact that Defendants explicitly described achieving carbon neutrality through third-party certifications that further described how underlying projects achieve offsetting carbon emission, the Court finds that a reasonable consumer would not view Defendants' conduct as inherently counterfactual nor unreasonable. *See* Ebner, 838 F.3d at 965. (Representations that "might conceivably be misunderstood by some few consumers viewing [them] in an unreasonable manner" do not suffice to survive dismissal).

Accordingly, the Court finds that Plaintiffs have failed to plausibly allege consumer protection claims.

United States District Court
Northern District of California

**C. Plaintiffs also failed to plausibly state a claim for breach of express warranty.**

Reynolds argue that Plaintiffs fail to state a claim for breach of express warranty because Defendants' "carbon neutral" statements do not constitute an "explicit guarantee" and even if so, Plaintiffs cannot show how "Defendants breached that warranty or caused Plaintiffs any injury." ECF 62 at 23–24. Plaintiffs counter that Defendants "promised" that their products were carbon neutral, but in fact, they were not. ECF 67 at 20. Plaintiffs allege that they suffered pocketbook injury by paying a price premium for the products "in reliance on the understanding that the products were carbon neutral." *Id*.

"To prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1031 (N.D. Cal. 2016). A plaintiff must "identify a specific and unequivocal written statement about the product that constitutes an explicit guarantee." *Valentine v. Crocs, Inc.*, 783 F. Supp. 3d 1204, 1211 (N.D. Cal. 2025) (citation omitted).

While Plaintiffs base their claim on Defendants' marketing representation, the FAC has failed to identify any "specific and unequivocal" statement that constitutes an explicit guarantee of the perfect outcome of carbon emission. Plaintiffs point to Defendants' various marketing channels, including press releases, webpages, and social media, claiming that these materials expressly warrant that their products result in net-zero carbon dioxide emissions to the atmosphere. ECF 55 ¶¶ 41–49. While the label "carbon neutral" and associated references to carbon-offsetting exist throughout Defendants' marketing materials, Plaintiffs have failed to plausibly allege that it amounts to an unequivocal promise that the underlying carbon-offset credits are infallible or that the absolute of net-zero carbon emissions. *See McMahon v. Take-Two Interactive Software, Inc.*, 745 F. App'x 786, 787 (9th Cir. 2018) ("the statement "Featuring GTA Online" did not specifically and unequivocally promise, or provide an explicit guarantee of, immediate access to GTA Online.").

Accordingly, the Court finds that Plaintiffs have failed to plausibly state a breach of

express warranty claim.

**D.    Plaintiffs abandoned the claims of implied warranty and unjust enrichment.**

Reynolds also move to dismiss that Plaintiffs fail to state a claim for implied warranty and unjust enrichment.  ECF 62 at 23–25.  Plaintiffs failed to raise any opposition to Reynolds' motion to dismiss with respect to the challenged claims.  Courts consistently hold that a plaintiff's failure to address or oppose arguments raised in a motion to dismiss constitutes abandonment of those claims.  *See* Jenkins v. County of Riverside, 398 F.3d 1093, 1095 (9th Cir. 2005) (finding that the plaintiff abandoned the claims she did not raise in opposition to the defendant's motion); *Banga v. Kohl's Dep't Stores, Inc.*, No. 13-00275, 2013 WL 6734116, at *4 (N.D. Cal. Dec. 20, 2013) (same); *Qureshi v. Countrywide Home Loans, Inc.*, No.09-4198, 2010 U.S. Dist. LEXIS 21843, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (same).

Accordingly, the Court construes Plaintiffs' silence as abandonment of implied warranty and unjust enrichment claims and as consent to dismissal.

**E.    BAT does not have personal jurisdiction in this instance.**

Turning to BAT's motion to dismiss, BAT contends that the Court lacks personal jurisdiction because BAT is a U.K.-based investment holding company with no presence, employees, or operations in California.  ECF 58 at 5–10.  BAT also claims that the Court cannot legally impute the contacts of its indirect subsidiaries to the parent holding company because the entities strictly maintain corporate formalities, including separate boards, records, and financial accounts.  *Id*. at 10.

Plaintiffs contend that this Court has jurisdiction over BAT because BAT exercises pervasive, top-down control over the Reynolds' daily operations, including "the reporting lines between BAT and Reynolds [] executives, communications reflecting BAT's oversight of U.S. operations, and facts surrounding the "key matters" relevant to the Reynolds[]' businesses over which BAT maintains exclusive control."  ECF 55 ¶ 21, ECF 66 at 1–3, 8.  Thus, Plaintiffs argue that jurisdiction exists over BAT because Reynolds are considered alter egos of BAT, and their contacts with this district should be imputed to BAT.  ECF 66 at 3.

To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is

United States District Court
Northern District of California

13

such "unity of interest and ownership" that the separate personalities [of the entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice. *Ranza*, 793 F.3d. at 1073 (citation omitted). The "unity of interest and ownership" prong of this test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id*. This test envisions pervasive control over the subsidiary, such as when a parent corporation "dictates every facet of the subsidiary's business— from broad policy decisions to routine matters of day-to-day operation." *Id*. In other words, this test may be satisfied when the parent company controls its subsidiary's internal affairs or daily operations. However, total ownership and shared management personnel are alone insufficient to establish the requisite level of control. *Id*. (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir.2003)).

Here, the Court finds that Plaintiffs have not yet met their burden under the alter ego test. While BAT sets the overarching global framework and environmental sustainability targets for its brands, including Reynolds, BAT's declaration suggests that BAT and Reynolds manage their own routine operations, accounting, and localized human resources functions. *See* ECF 58, Ferland Decl. ¶¶ 22-25; *Yamashita*, 62 F.4th at 502, *supra*.

Accordingly, BAT lacks personal jurisdiction in this instance.

### F.    Plaintiffs failed to demonstrate that jurisdictional discovery is necessary against BAT.

Plaintiffs contend that because they have alleged specific "dotted-line" reporting structures within Defendants' corporate hierarchy, a total denial of discovery against BAT would result in actual and substantial prejudice. ECF 66 at 6–8. Plaintiffs expect that jurisdictional discovery will enable them to investigate the following categories including BAT's involvement in developing and approving the carbon neutral strategy, its operational direction of the marketing campaign, its ownership and control of the publishing channel, its reserved powers and operational influence related to the conduct of the Defendants, the geographic targeting and digital marketing strategies for the carbon neutral campaign, intercompany attribution, and the centralized purchase and allocation of carbon credits. ECF 84 at 10–11.

14

United States District Court
Northern District of California

Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023). However, jurisdictional discovery should be "little more than a fishing expedition" to establish personal jurisdiction. *Id*. at 508. "[A] mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022) (citation omitted).

The Court finds that even if jurisdictional discovery were granted for the anticipated categories, Plaintiffs would remain unable to overcome the alter ego test. Plaintiffs have failed to controvert BAT's sworn declaration that it lacks pervasive control over Reynolds. Moreover, Plaintiffs have not demonstrated how their proposed discovery categories would yield facts sufficient to establish the requisite 'unity of interest and ownership.' Even assuming *arguendo*, that such discovery was obtained, the Court finds that it would be insufficient to satisfy the second prong of the alter ego test. *See Zeichner v. Nord Sec. Inc.*, No. 24-CV-02462-JSC, 2024 WL 4951261, at *5 (N.D. Cal. Dec. 2, 2024) ("[E]ven if discovery would establish a unity of interest and ownership among Defendants, Plaintiff has not explained how those facts might then show the required inequity under the second prong of the alter ego test.").

Accordingly, the Court declines to permit jurisdictional discovery for Plaintiffs.

## VII.   CONCLUSION AND RECOMMENDATION

For the reasons discussed, the Court **GRANTS-IN-PART AND DENIED-IN-PART** Reynolds' request for judicial notice.

The Court **DENIES-IN-PART** Reynolds' motion to dismiss on the standing ground and **GRANTS-IN-PART** the motion **WITHOUT PREJUDICE** for Plaintiffs' Counts 1-4 and **WITH PREJUDICE** for Counts 5-6.

The Court **GRANTS** BAT's motion to dismiss on jurisdictional grounds and **DENIES** Plaintiffs' request for limited jurisdictional discovery to resolve BAT's motion to dismiss.

The Court gives Plaintiffs leave to file a second amended complaint as to Counts 1-4

fourteen days from this order, and no later than March 6, 2026.

Initial Disclosures commenced on February 13, 2026.  ECF 46

The Further Case Management Conference set for June 18, 2026, at 2:00 PM in San Francisco - Videoconference Only is maintained.  Joint Case Management Statement due by June 11, 2026.

This Order resolves ECF 58, 62, 63, and 66

IT IS SO ORDERED.

Dated: February 20, 2026

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

16